FIRST AMERICAN TITLE INS. CO., a corporation, and Hogan Land Title Co., Inc., a corporation, Plaintiffs–Respondents,

v.

Roy BIRDSONG and Collyer Kelling, Defendants–Appellants,

v.

Harold W. Grissum, Mary Alice Grissum, Bobbi Bydalek, HCH Ozark Investors, Inc., Daniel E. Ruda, Santo M. Cantanese, Vacation World, Inc., Dwight Sprague, and Branson Commercial Property Investors Joint Venture, Defendants–Respondents.

No. 23228.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 16, 2000.

Richard E. Dorr and J. Michael Bridges, Springfield, for appellants.

Mark C. Fels and Gregory J. Smith, Springfield, for respondent Grisson.

Joseph A. Bohrer, Springfield, for respondents First American & Hogan Land Title.

Charles B. Cowherd & Michael S. Lawson, Springfield, for respondents HCH, Ruda, Catanse, Vacation World, Sprague & BCPI.

BARNEY, Chief Judge.

Defendants, Roy Birdsong and Collyer Kelling, (jointly, "Appellants") appeal from a judgment entered in an interpleader action, involving the disposition of the principal amount of $200,000.00, plus interest, held in an escrow account by Respondents First American Title Company and Hogan Land Title Company, Inc. (jointly, "First American Title"). In its judgment, described more fully below, the interpleader court gave no portion of the escrow account to either of the Appellants who now raise three major points of trial court error, discussed *infra*.

We glean from the record that First American Title was asked to provide title insurance in conjunction with the sale of three tracts of land in Taney County (variously "the land" or "the three tracts of land") by Interpleader Defendant Bobbi Bydalek ("Bydalek") to William and Betty Gehrs and James P. and Joyce L. Brines ("the Gehrs and Brines"). At the time First American Title was asked to provide the title insurance, the land was the subject of litigation and appeals relating to a previous sale of the same three tracts of land and involving Appellants and almost all other interpleaded parties.[1] *See* detailed discussion in *Birdsong v. Bydalek*, 953 S.W.2d 103 (Mo.App.1997) ("*Birdsong III*"); *see also Birdsong v. Bydalek*, 931 S.W.2d 217 (Mo.App.1996) ("*Birdsong II*"); and *Birdsong v. Bydalek*, 905 S.W.2d 896 (Mo.App.1995) ("*Birdsong I*").[2]

In order to obtain First American Title's agreement to provide title insurance, Bydalek entered into an indemnity agreement with First American Title and Bydalek and BCPI entered into a related escrow disbursement agreement with each other. By the terms of these two agreements, Bydalek and BCPI were to deposit $150,000.00 and $50,000.00 respectively into an escrow account held by First American Title. Under the terms of these agreements, First American Title was obligated to return any unused portion of the tendered amount of $200,000.00 to Bydalek and BCPI when title to the land was free of the effects of the pending lawsuit and when First American Title had no present or contingent liability arising out of the lawsuit. After Bydalek and BCPI duly

---

1. Aside from Appellants and Harold W. Grissum and Mary Alice Grissum, the other Interpleader Defendants were HCH Ozark Investors, Inc., Daniel Ruda, Santo Catenese, Vacation World, Inc., Dwight Sprague and Branson Commercial Property Investors Joint Venture (we shall variously refer to the foregoing parties as "BCPI" or "HCH–BCPI"). Ruda and Catenese were shareholders of HCH Ozark Investors, Inc.

2. On September 8, 1995, this Court dismissed all appeals in *Birdsong I* because the judgment failed to resolve all the claims. On October 22, 1996, this Court dismissed all appeals in *Birdsong II* because the *amended* judgment again did not resolve all claims. *See Birdsong III*, 953 S.W.2d at 110–11.

tendered their respective amounts into the escrow account, First American Title provided the required title insurance. Thereafter, Bydalek seasonably conveyed her interest in the three tracts of land to the Gehrs and Brines on September 12, 1994.

On November 22, 1994—during the pendency of *Birdsong I* and later *Birdsong II*, and prior to the filing of the instant interpleader action—in the course of a separate litigation, Interpleader Defendants Harold and Mary Grissum ("the Grissums") obtained a writ of attachment against Bydalek's interest in the escrow account. This was followed by a garnishment in aid of the writ of attachment. Later, on December 2, 1994, Bydalek signed a security agreement, duly filed, in which she granted the Grissums a security interest in the $150,000.00 which Bydalek had paid into the escrow account.[3] On November 22, 1994, the Grissums filed suit against Bydalek, eventually obtaining a money judgment on April 5, 1996, against Bydalek in the principal amount of $177,718.89.

On August 22, 1997, this Court rendered its opinion in *Birdsong III*, 953 S.W.2d at 103. As more fully set out below, the opinion affirmed that part of a second amended judgment of the Circuit Court of Taney County, entered November 21, 1996, which, *inter alia*, granted Appellants a judgment against Bydalek in the principal amount of $133,332.00, together with interest at the rate of 20 percent. Based on this monetary judgment, Appellants asserted in the interpleader action and again on appeal that they had a claim to Bydalek's share of the funds in the escrow account. Because of the competing claims to the escrow account, First American Title filed the instant interpleader action

from which judgment Appellants are the sole appealing parties.

The record shows that the interpleader court, *inter alia*, granted judgment to the Grissums for 75 percent of the escrowed funds contributed by Bydalek, "pursuant to their lien of attachment which was perfected by the entry of the April 5, 1996, judgment ... against defendant Bydalek in the sum of $177,718.99." Additionally, the trial court also gave a judgment for 25 percent of the escrowed funds to BCPI, based on the indemnity agreement entered into between Bydalek and First American Title and the escrow disbursement agreement between BCPI and Bydalek.

In their three Points Relied On, Appellants generally assert that the trial court erred in its judgment by: (1) determining that Appellants had "no lien, claim, or encumbrance that would constitute a cloud on the title" to the land; (2) finding in favor of the Grissums for 75 percent of the escrowed funds on the basis of a lien of attachment; and (3) finding in favor of BCPI for 25 percent of the escrowed funds on the basis of the "escrow disbursement agreement." They maintain the judgment of the trial court was against the weight of the evidence, was not based on substantial evidence and was based on erroneous application of law to the facts.

"We will sustain the judgment of the trial court unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Amwest Sur. Ins. Co. v. Stamatiou*, 996 S.W.2d 708, 711 (Mo.App.1999).

## I.

▮ In their brief, Appellants maintain that before the instant interpleader action,

---

**3.** A security interest in personal property is defined in section 400.1–201(37), RSMo 1994, as an "interest in personal property ... which secures payment or performance of an obligation." Under Section 400.9–105(1)(*l*), RSMo 1994, a security agreement "means an agreement which creates or provides for a security interest." As a general rule, under Missouri law, no precise words are required

to convey a security interest, but there must be some language in the agreement which actually conveys a security interest. *See In re Smith*, 167 B.R. 895 (Bkrtcy.E.D.Mo.1994). Further, as a general rule, a filing is required to perfect a security interest. *See generally*, §§ 400.9–302–306, RSMo 1994, and later amendments.

the Taney County Circuit Court's second amended judgment—detailed in *Birdsong III*—not only awarded them a money judgment against Bydalek in the amount of $133,332.00 plus interest, but also entitled them to assert a "contractual security interest," a judgment lien and/or an equitable lien against the land. They further maintain that the escrowed funds should have been used to settle their claimed interest and/or liens. Appellants also maintain that the trial court's findings went beyond the scope of the pleadings.

Appellants' first point of error has no merit. This is because the trial court in its second amended judgment, as affirmed with modifications by this Court in *Birdsong III*, *infra*, had already considered and settled the matter Appellants now wish to litigate anew in the course of the instant interpleader action. "The doctrine of *res judicata*, commonly referred to as 'claim preclusion,' operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them." *Jordan v. Kansas City*, 929 S.W.2d 882, 885 (Mo.App.1996).

In *Birdsong III*, this Court set aside the second amended judgment's award of monetary damages in favor of Bydalek and against Appellants arising from Appellants' purported tortious interference with Bydalek in her contract with HCH–BCPI.[4] *Birdsong III*, 953 S.W.2d at 125.[5] In doing so, this Court held that after July 1, 1993, Appellants were accorded the "status," of a "potential secured creditor," and therefore did not tortiously interfere with the contract between Bydalek and HCH BCPI, when they filed their three notices of *lis pendens* in connection with their suit against Bydalek and others.[6] *See Birdsong III*, 953 S.W.2d at 113–15. Based primarily on this Court's foregoing recitals, *supra*, coupled with Appellants' proposed interpretation of the contract language found in an "Assignment of Real Estate Purchase Agreement and Agreement of Joint Venture" ("Assignment Memo"),[7] Appellants now pose the rather

---

4. The original contract for the sale of the land was between Bydalek and HCH Ozark Investors. HCH subsequently assigned its interest to BCPI, a joint venture made up of HCH; Vacation World, Inc.; and Dwight Sprague.

5. Included in its judgment of tortious interference against Appellants was an award to Bydalek compensating Bydalek for monies paid to HCH–BCPI to cover interest and attorney's fees. *Birdsong III*, 953 S.W.2d at 125.

   In addition to reversing the tortious interference award, this Court reversed both the second amended judgment's award of damages to Bydalek for Appellants' purported breach of contract and the trial court's denial of Appellants' claim against Bydalek for breach of fiduciary duty. *Id.*

6. Appellants filed their suit in July of 1993.

7. As set out in abridged form in *Birdsong III*, 953 S.W.2d at 126–27, the Assignment Memo provided, in pertinent part, that:
   ASSIGNMENT OF REAL ESTATE PURCHASE AGREEMENT AND AGREEMENT FOR JOINT VENTURE
   . . . .
   BYDALEK presently is the owner of an agreement to purchase real estate in Branson Missouri comprised of three tracts. . . .

BYDALEK hereby assigns to BIRDSONG and KELLING that BYDALEK shall be compensated as follows:
   1. BIRDSONG and KELLING shall pay the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000) to BYDALEK at the time of execution of this agreement to be paid on the purchase price on the underlying contract.
   2. BYDALEK, BIRDSONG and KELLING agree to pay the sum of FIFTY THOUSAND DOLLARS ($50,000.00) on the contract on or before June 11, 1993.
   3. BIRDSONG and KELLING agree to use diligent efforts to obtain financing to close the underlying purchase transaction on or before its scheduled closing date of July 9, 1993. In the event they are unable to do so, they will notify BYDALEK of that inability on or before July 1, 1993, in which event the money advanced to BYDALEK shall be treated as a loan. In that event, BIRDSONG and KELLING will immediately reassign their interest in said agreements to BYDALEK and BYDALEK shall execute a note that by its terms will repay the amounts paid on the contract by BIRDSONG, KELLING and BYDALEK at twenty percent (20%) interest, due August 1, 1993, *secured by an interest in the real estate in question.* (Italics supplied).

ingenious argument that this Court gave recognition to their "security interest" or "equitable lien" in the three tracts of land.

These asseverations by Appellants have no merit. This is because the second amended judgment, as affirmed in pertinent part by this Court in *Birdsong III*, 953 S.W.2d at 125, declared that Appellants: (a) "had no interest [in the land] since July 1, 1993" under the Assignment Memo, *Id.* at 111; (b) ordered that the Assignment Memo with the abbreviated version of the Bydalek/Appellants contract be "released and declared to be null, void and of no force or effect," *Id.;* (c) ordered that all notices of *lis pendens* be "released and discharged," *Id.;* (d) declared that the Bydalek/HCH–BCPI contract for the sale of the three tracts of land was "in force 'through and including September 12, 1994,' and that it was 'specifically performed' on that date." *Id.*

. . . .

Additionally, while this Court recognized a reasonable relationship between the first three counts of Appellants' suit, sounding in equity, and Appellants' exercise of their legal right to file notices of *lis pendens,* as set out in section 527.260, RSMo 1986, *see Birdsong III*, 953 S.W.2d at 114, this Court neither gave nor recognized Appellants' claimed "security interest" in the three tracts of land.[8] Nor did the trial court or this Court give any recognition to Appellants' claimed "equitable lien."[9] Also, while this Court determined that Bydalek could not demonstrate a causal connection between the filing of the Assignment Memo by Appellants and her failure to close her sale in August 1993, *Birdsong III*, 953 S.W.2d at 115, we fail to see where that determination by this Court somehow gave recognition to Appellants' present claims of a continuing interest in the three tracts of land. *See*

8. "Courts may take judicial notice of their own records in prior proceedings which are between the same parties and are concerned with the same basic facts involving the same general claims for relief." *In Interest of C.M.W.*, 813 S.W.2d 331, 333 (Mo.App.1991). In Count I of their *Birdsong* pleadings, *supra*, Appellants sought a declaration of the parties' "ownership and purchase rights as to [the land]." *Birdsong III*, 953 S.W.2d at 114. Appellants' Counts II and III also sought specific performance of contracts relating to the land. *Id.* As observed previously, in the second amended judgment the trial court determined that Appellants had no interest in the land and denied Appellants' counts for specific performance. These determinations were affirmed by this Court in *Birdsong III. Id.* at 125.

It is noteworthy to observe that nowhere in their Taney County Circuit Court pleadings did Appellants specifically seek the imposition of an "equitable lien" on the land. *Res judicata* "applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors v. Reorganized Church*, 821 S.W.2d 495, 501 (Mo. banc 1991). "Put otherwise, a party may not liti-

gate an issue and then, upon an adverse verdict, revive the claim on cumulative grounds which could have been brought before the court in the first proceeding." *Id.*

9. We observe that "[e]quitable liens have been enforced under various facts and circumstances and it is difficult, if not impossible, to give an exact definition of what is meant by the term...." *Miller v. Heisler*, 187 S.W.2d 485, 491 (Mo.App.1945). "[I]n general it is a right, not recognized at law, but only in equity, which a court of equity will enforce in a proper proceeding by adjudging that a fund, or property, or the proceeds thereof, be applied in full, or in part, to the satisfaction of a particular debt or demand." *Id.* "An equitable lien may attach to property for the purpose of securing payment of an existing obligation and is ancillary to and separate from the debt." *Fredco Realty, Inc. v. Jones*, 906 S.W.2d 818, 822 (Mo.App.1995). "The necessary requirements of an equitable lien are: 1) a duty or obligation owed by one person to another; 2) a res to which that obligation fastens and which can be identified; and 3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation." *Id.; see also Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 420 (Mo.App.1987). In this opinion, we need not reconcile the tenets of the Uniform Commercial Code with the common law concept of equitable liens.

*supra.* At best, this Court only concluded Bydalek and HCH BCPI failed to sustain their burden of proof in their "interference tort claim" against Appellants. *Id.* The *Birdsong* trial court by its second amended judgment, as modified and affirmed by this Court, has already settled the issues Appellants now seek to revisit. Appellants may not raise the issues again in the instant appeal. *Jordan,* 929 S.W.2d at 882.

■ Appellants also claim that their money judgment obtained against Bydalek, in the principal sum of $133,332.00 together with interest, created a judgment lien against the land in question. They argue that an "inchoate" judgment lien attached May 31, 1994, with the filing of the original judgment entry by the trial court, and became "consummate" on November 21, 1996, the date of the entry of the second amended judgment by the *Birdsong* trial court. We disagree.

Section 511.350.1 reads, in pertinent part: "[j]udgments and decrees rendered ... by any district of the court of appeals, [or] by any circuit court ... shall be liens on the real estate of the person against whom they are rendered, situate in the county for which or in which the court is held." [10] With certain distinct exceptions inapplicable to the instant matter, "a judgment lien attaches to real estate on the date of the judgment." *Boatmen's Bank v. Foster,* 878 S.W.2d 506, 509 n. 4 (Mo. App.1994); *see* Rule 74.08 [11] ("the lien of a judgment commences upon entry of the judgment...."); *Pruellage v. De Seaton Corp.,* 407 S.W.2d 36, 39 (Mo.App.1966); *see also State ex rel. Turner v. Sloan,* 595 S.W.2d 778, 780 (Mo.App.1980). Rule 74.01(a) provides that a judgment "includes a decree and any order from which

an appeal lies." "Absent one of the exceptions expressly set out in § 512.020 ... 'a prerequisite to appellate review is that there be a *final* judgment.'" *City of St. Louis v. Hughes,* 950 S.W.2d 850, 852 (Mo. banc 1997)(emphasis added)(quoting *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995)). "A final and appealable judgment disposes of all issues in the case and leaves nothing for future determination, unless the trial court has specifically designated the order as a final judgment for purposes of appeal." *Birdsong I,* 905 S.W.2d at 897(quoting *Bay's Texaco Serv. & Supply Co. v. Mayfield,* 792 S.W.2d 50, 51 (Mo. App.1990)); *see* Rule 74.01.

As previously set out, when Appellants and Bydalek appealed from the original May 31, 1994, judgment, this Court dismissed the appeals because the judgment failed to resolve all claims in the litigation. *Birdsong I,* 905 S.W.2d at 897. This Court also dismissed the appeals of all litigants from the subsequent *amended* judgment, because it still did not resolve all claims. *Birdsong II,* 931 S.W.2d at 218. All the claims were finally adjudicated when the *second* amended judgment was entered on November 21, 1996.[12] *Birdsong III,* 953 S.W.2d at 111. Accordingly, Appellants' judgment lien against any real property owned by Bydalek in Taney County, Missouri would have attached on November 21, 1996. *See* § 511.350.1; *Cochenour v. Cochenour,* 717 S.W.2d 531, 532 (Mo.App. 1986).[13] However, by this date Bydalek had already, on September 12, 1994, conveyed away to Gehrs and Brines all of her interest in the three tracts of land—more than two years before the second amended judgment became final. Accordingly, Appellants' judgment lien could not have at-

---

**10.** All statutory references are to RSMo 1994, unless otherwise noted.

**11.** All rule references are to Missouri Court Rules (1995).

**12.** As best we understand the record, during the entire course of the Birdsong litigations the trial court never entered an order pursuant to Rule 74.01(b), determining that there

was no just reason for delay of the review of any of the claims submitted by the parties.

**13.** Recall that the second amended judgment held that Appellants had no interest in the land after July 1, 1993, and before Appellants' alleged "inchoate" interest arose. *See Birdsong III,* 953 S.W.2d at 110–11.

tached to the three tracts of land. *See, supra.*

▮ Lastly, Appellants claim that the interpleader court's findings and declarations should have been limited to the parties involved but, instead, went beyond the scope of the pleadings and more closely resembled findings in a quiet title action.

▮ This portion of Point One has no validity for two primary reasons. First, in Appellants' own prayer for relief contained in their amended answer, Appellants sought a determination that their purported judgment lien had "priority over and precedes any interests acquired or claimed by [the Gehrs and Brines] the insureds of First American Title...." However, the Gehrs and Brines were not parties to the interpleader proceedings. Second, the record shows the following colloquy involving Appellants' counsel:

> [Counsel for Appellants] Judge, I believe we all agree. And, of course, we're the ones that have something at stake here.
>
> [The Court] Right.
>
> [Counsel for Appellants] But we are going to put all the evidence that's pertinent to it with these documents.
>
> ....
>
> [Counsel for the Grissums] And if I may just make the record clear. I'm understanding that by express consent the parties intend to litigate all issues relating to the interest of all these parties in this real estate and in this escrow account and determine any clouds on the title, if any, there are.
>
> [Counsel for Appellants] And our position is you necessarily have to do that because First American, that 200,000's first obligation is to clear up the title.

The foregoing colloquy, together with other similar remarks made by Appellants' attorney at trial, sought to broaden the issues in the interpleader action beyond

the disposition of the escrowed funds, and precludes Appellants from now raising this sub-point of error. "[A]s a general rule a party may not 'complain of alleged error in which, by his own conduct at trial, he joined or acquiesced.' " *Smith v. Associated Natural Gas Co.,* 7 S.W.3d 530, 534 (Mo.App.1999) (quoting *Eyberg v. Shah,* 773 S.W.2d 887, 897 (Mo.App.1989)).[14] Point One is denied.

## II. and III.

▮ Appellants second and third points, relating to the proportionate disposition by the interpleader court of the escrowed funds, are logically related and are reviewed out-of-turn for ease of understanding.

In their third point, Appellants maintain that the interpleader court erred in awarding BCPI 25 percent of the escrowed funds. Appellants argue that under the indemnity agreement entered into by First American Title with Bydalek and the escrow disbursement agreement between Bydalek and BCPI, the funds were first to be used to clear the title from Appellants' claims against the land and to protect First American Title from liability relating to such claims but that this was never accomplished. In their second point, Appellants assert that the interpleader court erred in awarding the Grissums 75 percent of the escrowed funds on the basis of a lien of attachment, because neither the security agreement given by Bydalek to the Grissums, *see supra,* nor the indemnity agreement between Bydalek and First American Title entitled the Grissums to that award. These points have no merit.

As set out previously, *Birdsong III* affirmed the portions of the second amended judgment that determined Appellants had no further interest in the land as of July 1, 1993; dissolved all of Appellants' notices of

---

14. Additionally, Appellants do not cite to any authority supporting their proposition of error. "Failure to cite relevant authority supporting the point or to explain the failure to do so preserves nothing for review." *Kent v. Charlie Chicken, II, Inc.,* 972 S.W.2d 513, 516 (Mo.App.1998).

*lis pendens;* and declared the Bydalek/HCH BCPI contract for the sale of the land had been performed on September 12, 1994. *Birdsong III,* 953 S.W.2d at 125. Furthermore, and as discussed previously, although the second amended judgment accorded Appellants a money judgment against Bydalek on November 21, 1996, no judgment lien attached to the land because Bydalek had previously divested herself of all interest in the land on September 12, 1994, by selling the land to the Gehrs and Brines. Accordingly, under the terms of the indemnity agreement and escrow disbursement agreement with Bydalek and BCPI, First American Title was released from any present or contingent liability claims relating to the land arising from the *Birdsong* litigation filed by Appellants against Bydalek. Therefore, except for certain costs and expenses related to the interpleader action, BCPI was entitled to a refund of its 25 percent share of the escrowed funds and Bydalek was entitled to a refund of her 75 percent share of these same funds. However, as discussed, *infra,* Bydalek had already given a security interest in her share of the escrowed funds to the Grissums.

As previously discussed, the Grissums claimed that Bydalek owed them money. In their first attempt to collect this debt, the Grissums attempted to obtain an interest in Bydalek's escrowed monies by use of a prejudgment writ of attachment, issued on November 22, 1994, and by garnishment. This was accomplished after the three tracts of land had passed to the Gehrs and Brines on September 12, 1994. Next, on December 2, 1994, the Grissums *also* obtained from Bydalek a duly perfected security interest in her share of the escrow account in question, as collateral for the debts owed by Bydalek to the Grissums. Finally, the Grissums obtained a *default* judgment against Bydalek in the principal sum of $177,718.99 on April 5, 1996.

Although the interpleader court based its award to the Grissums on their lien of attachment, the Grissums' perfected security interest in the assigned assets—under the terms of the December 2, 1994, security agreement—makes it unnecessary for us to decide whether the lien of attachment or the garnishment in aid of attachment were valid. Our primary concern on appeal of a court-tried case "is the correctness of the result, not the route taken to reach it," *United Missouri Bank, N.A. v. Beard,* 877 S.W.2d 237, 241 (Mo.App.1994). The duly perfected security agreement of December 2, 1994, gave the Grissums priority over Appellants' unsecured interest as to Bydalek's share of the escrow account—subject, of course, to costs and expenses adjudged by the interpleader court. Points Two and Three are denied.

The judgment is affirmed.