**Dr. Allen E. NORTHERN, D.O., Rolla Medical Group and Women's Clinic, Inc., Plaintiffs,**

**and**

**Jerry Jacob McClain, by and through his mother and next friend, Lori Rutledge, Plaintiff–Respondent,**

**v.**

**PHYSICIANS DEFENSE ASSOCIATION and Continental Casualty Company, Defendants–Appellants.**

Nos. 24704, 24706.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 16, 2002.

Petition for Rehearing and Transfer Denied
Oct. 7, 2002.

Application for Transfer Denied
Nov. 26, 2002.

Jonathan L. Downard, Union, MO, for Appellant Physicians Defense Association.

Christopher P. Rackers, Hendren & Andrae, L.L.C., Jefferson City, MO, Sean M. Hanifin, Ross, Dixon & Bell, L.L.P., Washington, D.C., for Appellant Continental Casualty Co.

Matthew J. Padberg and Mark A. Keersemaker, Jr., The Padberg Law Firm, St. Louis, MO, for Plaintiff–Respondent.

JAMES K. PREWITT, Presiding Judge.

This consolidated appeal follows the grant of summary judgment against Physicians Defense Association ("PDA") and Continental Casualty Company ("Continental") finding both provided professional liability coverage for Dr. Allen Northern ("Northern") and Rolla Medical Group and Women's Clinic, Inc. ("the Clinic") for a claim made by Jerry Jacob McClain ("McClain"), by and through his mother and next friend, Linda Rutledge, against Northern and the Clinic. In their points relied on, PDA and Continental each argue that the claim made on behalf of McClain was excluded from coverage under its claims made policies that provided professional liability insurance to Northern and the Clinic. With respect to Continental, we agree.

On May 2, 1995, McClain was born with brain damage and suffered other birth complications. Northern and the Clinic purchased a claims made professional liability insurance policy from PDA, which provided coverage for claims made during

the policy period of January 1, 1997 through December 31, 1997, with a retroactive date of January 1, 1995 to cover medical occurrences that happened subsequent to that date. On January 2, 1997, a medical malpractice action was filed on behalf of McClain against Northern and the Clinic. The lawsuit was reported to PDA, which then proceeded to defend Northern and the Clinic.

In May 1997, Northern completed an application for insurance coverage through Continental on which he referred to the May 1995 incident and January 1997 filing as an open claim that involved PDA, his then current liability insurer. In June 1997, Northern and the Clinic changed insurance carriers, canceling their coverage under the PDA policy and switching to coverage under a claims made professional liability insurance policy provided by Continental. June 1, 1997 was the effective date for both the cancellation of the PDA policy and initiation of the Continental policy. The latter was renewed through June 1, 2000, with a retroactive, or prior acts, date subsequent to the May 1995 incident; therefore, it would provide coverage for incidents that occurred after May 1995, assuming claims were made according to policy provisions.

The cause of action filed on behalf of McClain was dismissed without prejudice for failure to prosecute on or about June 13, 1999. PDA continued to provide a defense for the lawsuit until that time. The claim was refiled on August 16, 1999. Continental was notified of the lawsuit on August 17, 1999 on a claim form that indicated that May 2, 1995 was the event date. PDA was notified of the refiling on August 20, 1999, and provided representation of Northern and the Clinic after that time under a reservation of rights.

On July 24, 2000, a judgment was entered against Northern and the Clinic in the amount of $14,425,916. Under the terms of the settlement agreement, McClain agreed to attempt to enforce the judgment only against the insurance carriers.

Subsequent to that judgment, Northern, the Clinic, and McClain filed an amended petition for declaratory judgment and damages against PDA and Continental. Count I of the amended petition included allegations that the claim referenced in the lawsuit filed in August 1999 was covered under the PDA policy, since it was the same cause of action as that filed in January 1997, which was a claim made during PDA's policy period. The amended petition also alleged in count I that the claim referenced in the August 1999 lawsuit was covered under the Continental policy, since the claim was made to Continental during its policy period.

Count II claimed breach of contract against PDA and Continental for their alleged failure to defend Northern and the Clinic and refusal "to perform in accordance with the terms and provisions of the contract[s] of insurance." Count III alleged that both PDA and Continental insured Northern and the Clinic for the actions of negligence that were the basis of the $14 million judgment against Northern and the Clinic, and that neither PDA nor Continental had satisfied the July 2000 judgment. Within count III it was also alleged that PDA and Continental further claimed that they did not insure Northern and the Clinic for the claim referenced in the August 1999 lawsuit and, therefore, refused to indemnify Northern and the Clinic for the judgment.

On March 13, 2001, the trial court denied a motion for summary judgment filed by PDA, determining that the claim was first made to PDA within the effective policy period for an alleged medical incident that occurred within the retroactive

period of the policy. The trial court further found that the action filed in August 1999 was not a new or different claim from the one made in January 1997.

On July 2, 2001, McClain filed a motion for summary judgment against PDA. Continental filed a motion for summary judgment on August 2, 2001, and on August 31, 2001, McClain filed a motion for summary judgment against Continental.

On November 20, 2001, the trial court ruled on the above three motions and entered an amended judgment and order. The trial court granted McClain's motions for summary judgment against PDA and Continental, respectively, and denied Continental's motion for summary judgment against McClain. The trial court reiterated its finding that a claim regarding the May 1995 incident was made to PDA within its policy period, and that the lawsuit filed in August 1999 was not a new or different claim.

Judgment was entered against PDA and Continental, and in favor of Northern, the Clinic, and McClain on counts I and III of the amended petition. The trial court designated the judgment as final on those two counts, determining there was "no just reason for delay," but held count II in abeyance until the issues relating to counts I and III were resolved on appeal. The trial court determined that both of the PDA and Continental policies provided coverage for the claim.

The trial court also determined that the limits under Continental's policy for the underlying case against Northern and the

Clinic were $1 million for each medical occurrence and $3 million for the annual aggregate for the policy period. The maximum policy limits of the PDA policy were not at issue and were $200,000 and $600,000, respectively.

■ It is a prerequisite for our review that there be a final judgment. *First American Title Ins. Co. v. Birdsong*, 31 S.W.3d 531, 536 (Mo.App.2000). For a judgment to be final and appealable, it usually must dispose of all the issues in the case and leave nothing for final determination. *Id.* Here, count II was not resolved, but the trial court found no just reason for delay, designated the judgment and order as a final judgment for purposes of appeal, and held count II in abeyance until the issues on appeal relating to counts I and III were resolved. Under such circumstances, we may review and consider the order from which PDA and Continental appeal. *See id.*

■ "Reviewing summary judgment on appeal is a question of law reviewed *de novo* on the record." *American Family Mut. Ins. Co. v. Crites*, 973 S.W.2d 137, 138 (Mo.App.1998). Our analysis is based primarily on the interpretation of the coverage and provisions of the two claims made insurance policies, and the interpretation of the meaning of an insurance policy is a question of law. *Goza v. Hartford Underwriters Ins. Co.*, 972 S.W.2d 371, 373 (Mo.App.1998).[1]

In its sole point relied on, PDA claims that the trial court's determination that the PDA claims made policy would provide

1. We note that all parties to these appeals state that our standard of review here is that "[w]e will sustain the judgment of the trial court unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Amwest Sur. Ins. Co. v. Stamatiou*, 996 S.W.2d 708, 711 (Mo.App. 1999). Within all of the points relied on, the appellants argue that the trial court's judgment "erroneously declared or applied the law." The similarity between that phrase and "reviewing as a question of law" may have accounted for any misstatement in their proposed standard of review.

coverage for the claim referenced in the August 1999 lawsuit was in error because the policy had been terminated and the original claim dismissed.

Continental's two points on appeal approach the same issue. In its first point, Continental claims that the trial court's judgment was in error because the claim was first made before Continental's claims made policy became effective. In its second point, Continental argues that its policy expressly excluded the claim, since, on the inception date of the policy, it was either a pending claim or Northern and the Clinic were aware that the May 1995 medical incident would result in a claim.

■ The bulk of our analysis, particularly for PDA's sole point and Continental's first point, is based on the law related to claims made policies. Presently there are two primary types of professional liability policies: claims made and occurrence. *Continental Cas. Co. v. Maxwell,* 799 S.W.2d 882, 886 (Mo.App.1990). An occurrence policy will cover negligent acts or omissions that occur during the policy period, irrespective of when the acts/omissions are discovered or a claim is made. *Id.* Under a claims made policy, the coverage is effective when the claim regarding an act/omission is made. *Id.* Thus, under most circumstances, a claims made policy is triggered by the date the claim is made to the insured. *Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.,* 969 S.W.2d 749, 752 (Mo.banc 1998).

Generally, under a claims made policy, three dates are of significance: the date of the act/omission, the date the claim regarding that act/omission is made to the insured, and the date the insurer is notified of the claim. *Id.* In the case at bar, the date of the act/omission was May 2, 1995; the date the claim was made to the insured was at least by January 2, 1997,

when the original lawsuit was filed; and PDA was notified of that claim shortly afterwards. There is no dispute that, had the cause not been dismissed, the claim was made during the policy period and would have been covered under PDA's policy.

■ One issue is whether the dismissal without prejudice and subsequent refiling of the cause changes that determination. We find that it does not. When a claimant voluntarily dismisses a lawsuit, otherwise known as a voluntary dismissal without prejudice, such action "renders that cause of action a nullity; it is treated as never having been filed." *Wittman v. National Supermarkets, Inc.,* 31 S.W.3d 517, 520 (Mo.App.2000). In effect, the dismissal of the first lawsuit under those circumstances makes it cease to exist in many respects. *Id.*

■ Section 516.230, RSMo Supp.1998, allows the refiling of a suit within one year after a nonsuit, provided the first suit was filed within the statute of limitations. *Rosenfeld v. Thoele,* 28 S.W.3d 446, 450 (Mo.App.2000). This "savings statute" applies in medical malpractice cases. *See Keys v. Nigro,* 913 S.W.2d 947, 949 (Mo.App.1996).

As noted above, a claims made policy is triggered when the claim is made to the insurer. *Wittner,* 969 S.W.2d at 752. The PDA policy incorporates that concept, as the policy instructs the insured that "[i]f a claim is made against you, or a lawsuit filed against you, you must immediately notify [PDA] in writing of same." The policy further defines that a claim or lawsuit is considered first made when the insured "first report[s] a claim or lawsuit arising from an occurrence or injury to [PDA] in writing."

■ Once that claim is made, it is not necessary that a suit relating to that claim be made during the policy period. *See*

*Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831, 835 (Mo.App. 1983). Thus, whether a suit was filed within the policy period or outside of it is not the determining factor, because when the claim was made determines coverage. Therefore, since the suit filed in August 1999 related back to when the claim was initially made, which was within the PDA policy period, the trial court did not error in finding that PDA provided coverage for the claim made in that lawsuit. PDA's point is denied.

The above analysis also serves as the basis on which to grant Continental's first point, in which they argue that they are not the insurer responsible for indemnification of the claim referenced in the August 1999 lawsuit, because the claim was not first made within the policy period. McClain argues that the claim was first made to Continental in August 1999, which did fall within the policy period of Continental's insurance policy in effect at that time.

The Continental policy defines a claim as the "receipt by [the insured] of a demand for money or services, naming [the insured] and alleging a medical incident." Continental's policy further provides that "[a]ll claims arising out of the same medical incident will be considered as having been made at the time the first report was made." Within his application for coverage by Continental, Northern represented that the claim relating to the May 1995 medical incident was made in January 1997 to his "current" insurance provider, PDA. Continental's policy, as a claims made policy, also requires that the claim be first made during the policy period.

An Eighth Circuit case applying Missouri law stated that coverage under a claims made policy is triggered when a claim is first made, but not every time a claim is made. *See Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981, 983 (8th Cir.1995). The court further determined that no coverage existed when a claim is first made before a policy became effective, even though a lawsuit was filed during the policy period. *Id.*

Thus, although PDA's policy was triggered when the claim was first made and continued to provide coverage when the claim was refiled in August 1999, Continental's policy was not triggered by the August 1999 refiling. Continental's first point on appeal has merit and is granted. As this point is dispositive, we will not address Continental's second point.

The trial court's judgment is affirmed with respect to PDA, but reversed with respect to Continental. The cause is remanded with instructions for the trial court to enter summary judgment in favor of Continental.

RAHMEYER, C.J., and PARRISH, J., concur.