Jerry Jacob McCLAIN, by and through his Mother and Next Friend, Lori RUTLEDGE, Dr. Allen Northern, and Rolla Medical Group and Women's Clinic, Inc., Plaintiffs and Relators–Appellants,

v.

Constantine CARPIO, M.D., Soung Kwoun, M.D., Newton Neufeld, D.O., Carl Doerhoff, Victor Lovell, M.D., and Physician Defense Association, Defendants,

and

Mary James, Defendant Ad Litem for the Estate of Charles A. James, M.D., Lloyd Downard, John Linde, M.D., John Schwent, M.D., James Cesar, D.O., Kap Chung, M.D., Ralph Cooper, M.D., Alan Doerhoff, M.D., Carter Fenton, D.O., James Flanary, D.O., Adeluolag G. Lipede, M.D., and Benny Thomas, D.O., Defendants–Respondents.

Nos. SD 30595, SD 30760.

Missouri Court of Appeals, Southern District, Division One.

March 31, 2011.

Matthew J. Padberg and Anna E. Haber, The Padberg & Corrigan Law Firm, St. Louis, MO, for Appellants.

Jonathan Lloyd Downard, Hansen, Stierberger, Downard, Melenbrink & Schroeder, L.L.C., Union, MO, and Steven P. Kuenzel, Eckelkamp & Kuenzel, L.L.P., Washington, MO, for Respondents James, Linde, Schwent, Downard, Fenton, Lipede, and Thomas.

Dale C. Doerhoff and Heidi Doerhoff Vollet, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, MO, for Respondents Cesar, Chung, Flanary, and A. Doerhoff.

Karl W. Blanchard, Jr., Joplin, MO, for Respondent Cooper.

Dana Lee Frese, Jefferson City, MO, for Defendant Physicians Defense Association.

GARY W. LYNCH, Judge.

Jerry Jacob McClain, by and through his mother and next friend, Lori Rutledge; Dr. Allen Northern; and Rolla Medical Group and Women's Clinic, Inc. (collectively "Plaintiffs") appeal the trial court's summary judgment in favor of James Flanary, James Cesar, Kap Chung, Alan Doerhoff, Carter Fenton, Adeluolag Lipede, Benny Thomas, John Linde, John Schwent, Ralph Cooper, Lloyd Downard, and Mary James, defendant ad litem for the Estate of Charles James (collectively "Defendants"). That judgment was entered based upon the trial court's conclusion that all of Plaintiffs' claims against Defendants were barred by the statute of limitations. Finding that conclusion erroneous, we reverse and remand for further proceedings.

### Factual and Procedural Background

On April 7, 1986, the Director of the Missouri Division of Insurance, by authority granted in Chapter 383, RSMo, issued a Certificate of Authority to Physicians Defense Association ("PDA") to engage as a corporation, in accordance with its Articles of Association, in the business of malpractice insurance in the State of Missouri. The next day, PDA filed its Articles of Association with the Missouri Secretary of State. PDA's purpose was to provide professional liability insurance or indemnification for persons licensed under the provisions of Chapter 334, RSMo, and corporations formed for the practice of medicine under Chapters 351 and 356, RSMo. PDA was an assessment mutual insurance company in which members paid an assessment upon membership and agreed to pay additional assessments as necessary for coverage of liability. Its board of directors, however, never made any special assessments against any policyholders or members. It had no shareholders.

On January 1, 1995, plaintiffs Allen Northern and Rolla Medical Group and Women's Clinic ("Insureds") purchased a professional liability insurance policy ("the Policy") from PDA covering the period January 1, 1995, to December 31, 1997, which provided coverage in the amounts of $200,000.00 per person and $600,000.00 per occurrence for "claims made."

During that coverage period, on January 2, 1997, McClain filed a medical malpractice claim in Phelps County Circuit Court against Insureds and others based on their negligence during his delivery and birth on May 2, 1995.

Also during the first part of 1997, PDA's board of directors decided to discontinue business and endorsed another insurance carrier to replace outstanding policies of liability insurance. All business activity of PDA associated with new business and underwriting was discontinued effective July 1, 1997. A special meeting of the

PDA members was held on August 12, 1997, at which the members voted to dissolve PDA. The membership also accepted the resignation of the board of directors and approved the appointment of Lloyd Downard and Charles James to continue as officers and trustees of PDA to complete all acts necessary for its dissolution. Also on that date, PDA's membership and board of directors approved payment to Lloyd Downard and Charles James in the sum of $168,000.00 each.

Between August 25, 1997, and September 29, 1997, PDA distributed to some defendants the following: $2,058.00 to Flanary; $1,029.00 to Cesar; $965.00 to Chung; $8,724.00 to A. Doerhoff; $3,601.00 to Fenton; $19,046.00 to Lipede; $3,073.00 to Thomas; $6,120.00 to Linde; and $10,309.00 to Schwent.

McClain's malpractice case that was pending in Phelps County was dismissed without prejudice in June 1999 and then re-filed in that same county on August 16, 1999 ("the malpractice action").

Judgment was entered in the malpractice action on August 10, 2000, in favor of McClain and against Insureds in the amount of $14,425,916.00. This judgment also found that a section 537.065 settlement agreement entered into between McClain and Insureds on March 27, 2000, was made in good faith and was reasonable.

Around September 18, 2000, McClain and Insureds filed a declaratory judgment action against PDA seeking a determination that the Policy covered the malpractice action judgment against Insureds ("the declaratory judgment action").

On or about December 1, 2000, PDA distributed to some defendants the following: $100.00 to Flanary; $125.00 to Cesar; $525.00 to Chung; $2,150.00 to A. Doerhoff; $275.00 to Fenton; $575.00 to Li-pede; $725.00 to Thomas; $4,900.00 to Linde; and $2,225.00 to Schwent.

PDA filed Articles of Dissolution and Articles of Termination with the Missouri Secretary of State on January 29, 2001. Such articles stated that "all debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefore." Contrary to such statement, PDA had not made adequate provision to discharge its liabilities. On that same day, the Missouri Secretary of State issued a Certificate of Termination of PDA certifying that the corporate existence of PDA ceased as of that date.

PDA published notice of dissolution and notice to file claims pursuant to section 351.482(3), RSMo (previously section 351.565, RSMo) in the *Jefferson City Tribune* on February 9, 2001, and in *Missouri Lawyers Weekly* on February 12, 2001.

By letter dated February 12, 2001, counsel for McClain provided notice to PDA of his claims and the judgment in the malpractice action against Insureds. The letter also advised of the pending declaratory judgment action.

Judgment was entered in the declaratory judgment action on October 23, 2001, in favor of McClain and Insureds and against PDA, finding that the Policy provided coverage for the judgment in the malpractice action. The judgment in the declaratory judgment action was affirmed by this Court. *See Northern v. Physicians Def. Ass'n*, 88 S.W.3d 130 (Mo.App.2002). An application for transfer was denied by the Supreme Court of Missouri on November 26, 2002.

Defendants Flanary, Cesar, Chung, A. Doerhoff, Fenton, Lipede, Thomas, Linde, and Schwent were all members of PDA in 1997. Defendants Flanary, Cesar, Chung, Cooper, and A. Doerhoff were never offi-

cers or directors of PDA. Defendants Fenton, Lipede, and Thomas were not officers of PDA at the time the Policy was sold to Insureds. Defendant Linde, beginning in 1992, and defendant Schwent, beginning in 1996, served on PDA's board of directors until all members of the board resigned on August 12, 1997.

Defendant Downard was never a member of PDA. He was appointed as PDA's secretary-treasurer on February 27, 1996, and elected to the board of directors by PDA's membership on May 13, 1996. He served as a director until all members of the board resigned on August 12, 1997.

Defendant James was not a medical doctor and was never a member of PDA. He served on PDA's board of directors begin-

ning with its incorporation in 1986 and served as PDA's president from 1987 to 2000.

Plaintiffs filed their original petition in this action on March 17, 2003, against James and thirty-five unknown and unnamed directors of PDA, seeking recovery for alleged fraudulent transfers made by James, as president of PDA, in 1997 to PDA's directors. Downard was apparently added as a defendant with the filing of Plaintiff's first Amended Petition, which, according to the docket sheet, was filed on February 23, 2004, with service of process upon him on March 25, 2004.[1]

Almost two years later, on February 6, 2006,[2] Plaintiffs filed their Second Amend-

1. The nature of the claim or claims asserted in Plaintiffs' first Amended Petition are not revealed by the record because that document was not included by Plaintiffs in the record on appeal.

2. In their statements of uncontroverted material facts, defendants Flanary, Cesar, Chung, and A. Doerhoff stated that each "was first named as a party to this lawsuit when the plaintiffs filed their Second Amended Petition on *February 26, 2006.*" (Emphasis added). In support, these defendants cited to "Second Amended Petition and docket entry for February 26, 2006." Plaintiffs' response to each stated: "Plaintiffs admit that Defendant was added by name pursuant to Plaintiffs' Second Amended Petition." Defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James, in their statements of uncontroverted facts, stated that "Plaintiffs filed a Second Amended Petition against all Defendants on *May 20, 2006.*" (Emphasis added). None of these defendants referenced a supporting source, as required by Rule 74.04(c)(1). In their response, Plaintiffs denied this filing date, asserting a February 6, 2006, filing date, also without any reference to a supporting source. Plaintiffs' Second Amended Petition shows a filed-stamped date of February 6, 2006, and the trial court's docket sheet shows a corresponding entry on February 6, 2006, for the filing of Plaintiffs' Second Amended Petition. The docket sheet has no entries on either February 26, 2006, or May 20, 2006.

In the statement of facts in their opening brief, Plaintiffs recited February 6, 2006, as the filing date of their Second Amended Petition, citing the filed-stamped copy of that pleading in the legal file. Defendants Flanary, Cesar, Chung, and A. Doerhoff, in their supplemental statement of facts in their brief in response, also relied upon the same filed-stamped copy of Plaintiffs' Second Amended Petition to support their statement that "[t]he lawsuit ... was not filed against them until February 2006 when they were added as defendants under plaintiffs' Second Amended Petition[.]" Moreover, in the argument portion under their second point of their opening brief, Plaintiffs recite a February 6, 2006, filing date for their Second Amended Petition, citing in support that pleading and the docket entry on that date as shown in the legal file. This recital was made in the context of Plaintiffs' argument that this filing date brought them within the appropriate statute of limitations. In their respondents' brief, defendants Flanary, Cesar, Chung, and A. Doerhoff acknowledge Plaintiffs' argument but make no mention of any other filing date for Plaintiffs' Second Amended Petition as being supported by the summary judgment record or otherwise challenge the February 6, 2006, filing date as asserted by Plaintiffs. Defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James, in their respondents' brief, do not respond to this specific argument by Plaintiffs. But in their discussion of the

ed Petition, naming as defendants, in addition to James[3] and Downard, the other respondents in this appeal: Flanary; Cesar; Chung; A. Doerhoff; Fenton; Lipede; Thomas; Linde; Schwent; and Cooper, along with Constantino Carpio; Soung Kwoun; Newton Neufeld; Rex Carter; Carl Doerhoff; and Victor Lovell.[4] Plaintiffs' Second Amended Petition sought recovery for alleged fraudulent transfers made in 1997 by James, Downard, Linde, and Schwent, as statutory trustees of PDA, to the other named defendants.

Following Plaintiffs' filing of their Third Amended Petition on March 6, 2007, alleging eight different counts (counts 1 and 3–8 against all defendants, and count 2 against James, Downard, and PDA's last board of directors), those defendants who had entered their appearance and answered this petition filed individual motions for summary judgment on all counts. While these motions for summary judgment were pending, Plaintiffs sought and were granted leave by the trial court to file their Fourth Amended Petition. The parties agreed and stipulated to the trial court that all pending motions for summary judgment were applicable to the Fourth Amended Petition.

The Fourth Amended Petition added PDA as a defendant and contains eleven counts. Count I ("Fraud")[5] is against James, Downard, and PDA, seeking recovery for fraud in misrepresentations made in the policy when it was issued and for misrepresentations Downard made to the Missouri Secretary of State on or about January 29, 2001, in PDA's Articles of Termination. Count II ("Mandamus") seeks a writ of mandamus against James, Downard, Linde, and Schwent that, as a result of the alleged misrepresentations in the Articles of Termination, "PDA, through its last Board of Directors and statutory Trustees, should be ordered ... to assess its member's [sic] sufficient amounts to cover the judgment [in the malpractice action]." Count III ("Constructive Trust") requests against each of the individual defendants the imposition of a constructive trust on the funds received by each of them from PDA. Count IV ("Unjust Enrichment") seeks damages for each individual defendant's unjust enrichment from funds received by each of them from PDA. Count V ("Equitable Assessment"), asserted against all individual defendants who were members of PDA, prays for "the Court to enter its order and judgment against Defendants including

application of the statute of limitations, they state that Plaintiffs' Second Amended Petition was filed on February 6, 2006, and cite in support the trial court's docket entry of that date as shown in the legal file. Based upon this record before us, we conclude that no genuine issue of fact exists as to the filing of Plaintiffs' Second Amended Petition on February 6, 2006.

3. Due to the death of Charles James in the interim, Plaintiffs substituted in his place Mary James, as defendant ad litem for the Estate of Charles James. For ease of reading, this opinion will use "James" to refer to both Charles James's actions during his lifetime and to Mary James in her representative capacity for him after his death.

4. Apparently, service was never obtained on Carpio, Kwoun, and Neufeld, and Plaintiffs' claims against them are still pending before the trial court. Plaintiffs dismissed their petition with prejudice as to Carter on August 5, 2009.

5. The parenthetical after the mention of each count in this paragraph contains the title of that count as stated in Plaintiffs' Fourth Amended Petition. We employ those titles herein to refer to specific counts in the petition, but such use is solely for that purpose and is not intended as a determination on the relative merits of any count, which we do not address in any manner in this opinion.

members/shareholders of PDA to pay assessments equivalent to their proportionate share of the judgment against PDA" in the malpractice action. Count VI ("Accounting"), originally against all defendants but later mooted by discovery as to all defendants except James, Downard, and PDA, prays for a judgment "ordering an accounting of the distributions made by PDA[.]"[6] Count VII ("Fraudulent Transfers") seeks damages against James, Downard, Linde, and Schwent, as statutory trustees of PDA, for alleged transfers that were fraudulent, "pursuant to Chapter 351 of the Missouri Revised Statutes, including Section 351.478," by payments made from PDA "to its directors and members while the McClain claim was still pending[.]" The remaining Counts VIII through XI are *solely* against PDA and are *not involved in or relevant to this appeal*.

The trial court granted the summary judgment motions of defendants Flanary, Cesar, Chung, A. Doerhoff, Fenton, Lipede, Thomas, Linde, Schwent, Downard, James, Cooper, C. Doerhoff, and Lovell. The trial court found that Plaintiffs "are barred from prosecution of any count of their Petition against any" of these individually named defendants "by the Missouri Statutes of Limitation" and accordingly entered judgment in favor of each defendant. The trial court expressly noted that it did "not address the legal propriety of the basis of prosecution of each count[.]" Finally, the trial court expressly stated that this judgment "is final for purposes of appeal. This Court certifies that under Rule 74.01(b) there is no just reason for delay."

Plaintiffs timely appealed the trial court's judgment as to all individually named defendants granted judgment in their favor. After doing so, however, Plaintiffs filed motions, with accompanying stipulations attached, asking this Court to dismiss the appeal as to defendants C. Doerhoff and Lovell. Both motions were granted, and both C. Doerhoff and Lovell were dismissed as parties to this appeal.

On appeal, Plaintiffs claim that the trial court erred in entering summary judgment in three respects: first, section 351.482 does not "apply to the dissolution of a nonprofit corporation"; second, section 516.120, the applicable statute of limitations, does not bar Plaintiffs' causes of action because they did not accrue until November 26, 2002; and, third, in any event, section 516.170 tolls any statute of limitations on McClain's claims until he reaches the age of twenty-one.

Defendants[7] initially respond by claiming that the appeal is moot "because the same judgment on the same grounds in favor of [defendants] Lovell and [C.] Doerhoff is final and non-appealable, and [Plaintiffs] are estopped from treating the judgment as final as to some [Defendants] but not final as to other [Defendants]." (Use of upper and lower case substituted for use of all capitals in original). As to the merits of the appeal, Defendants variously claim that, first, Plaintiffs' causes of action are barred by the ninety-day period prescribed in section 355.696.3; second, if section 516.120 is the applicable statute of limitations, all of Plaintiffs' causes of action are barred because they accrued more than five years before Plaintiffs filed suit;

6. Plaintiffs represented to the trial court that discovery had mooted this count as to distributions made to PDA's members but was still alive as to James's and Downard's compensation from PDA.

7. Defendants Flanary, Cesar, Chung, and A. Doerhoff filed a combined brief. Defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James filed a combined brief. Defendant Cooper did not file a brief.

third, section 516.170 does not toll the statute of limitations for any of McClain's causes of action because his claims are derived through Insureds' claims against PDA and its directors, officers, and members; and, fourth, even if any or all of Plaintiffs' claims are not barred by an applicable statute of limitations, various other legal grounds exist to support the grant of summary judgment in favor of Defendants on each count in .Plaintiffs' Fourth Amended Petition.[8]

## Standard of Review

"Appellate review of summary judgment is de novo [.]" *Neske v. City of St. Louis,* 218 S.W.3d 417, 421 (Mo. banc 2007). Summary judgment is appropriate "where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Appellate review is based upon the record submitted to the trial court. *Sexton v. Omaha Prop. and Cas. Ins. Co.,* 231 S.W.3d 844, 845 (Mo.App.2007). That record is viewed in the light most favorable to the party against whom judgment was en-tered, and the non-moving party is accorded the benefit of all inferences that may be drawn from the record. *ITT Commercial Fin.,* 854 S.W.2d at 376.

## Discussion

We address the issues raised by the parties in the following order: Defendants' claim that the appeal is moot; Plaintiffs' claim in their first point that section 351.482 is not the applicable statute of limitations; Defendants' claim that section 355.696 is the applicable statute of limitations; Plaintiffs' second point challenging the trial court's application of section 516.120; and finally, Plaintiffs' third point asserting the tolling provisions of section 516.070.[9]

### I. The Appeal is not Moot

■ Defendants argue that the finality of the judgment as to defendants C. Doerhoff and Lovell, due to Plaintiffs' dismissal of the appeal as to them, moots the appeal as to the other defendants because Plaintiffs "are estopped from treating the judgment as final as to some [defendants] but not final as to other [defendants]." (Use of upper and lower case substituted for use of all capitals in original). In support of their

8. Rule 74.04(c)(1) provides, in relevant part, that "[a] motion for summary judgment shall summarily state the legal basis for the motion." Not one of Defendants' motions for summary judgment, however, stated any legal basis, summarily or otherwise. "Generally, failure to comply with Rule 74.04(c)(1) warrants a trial court's denial of a summary judgment motion and warrants an appellate court's reversal of the grant of summary judgment." *Premier Golf Missouri, LLC v. Staley Land Co., LLC,* 282 S.W.3d 866, 872 (Mo.App. 2009) (quoting *Gillespie v. Estate of McPherson,* 159 S.W.3d 466, 470 (Mo.App.2005)). Non-compliance is not a matter subject to waiver by a party and may be raised sua sponte by an appellate court. *Hanna v. Darr,* 154 S.W.3d 2, 5 (Mo.App.2004) (citing *Miller v. Ernst & Young,* 892 S.W.2d 387, 389 (Mo. App.1995)). Nevertheless, "[i]f the issues and the documents in support of those motions are clear to the litigants, the trial court, and the appellate court, the failure to comply with Rule 74.04 does not per se preclude the granting of summary judgment nor the affirming of such a judgment. In short, the trial court and the appellate court are vested with discretion." *Sotirescu v. Sotirescu,* 52 S.W.3d 1, 7 (Mo.App.2001) (internal citations omitted). As demonstrated by its judgment, the only issue clear to the trial court was the application of "the Missouri Statutes of Limitation." Thus, we exercise our discretion to review the merits of that legal basis for the trial court's grant of summary judgment, but no other.

9. All statutory references are to RSMo 2000, unless otherwise indicated.

contention, they cite to *Schulte v. Schulte*, 949 S.W.2d 225 (Mo.App.1997), for the following proposition:

"[A] party may procedurally estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal, and the estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment."

*Id.* at 226 (quoting *State ex rel. Royce–St. Louis Ltd. P'ship v. Kraiberg*, 864 S.W.2d 409, 411 (Mo.App.1993)). The issue for us to determine then is whether the finality of the judgment as against C. Doerhoff and Lovell "expressly or impliedly recognizes the validity of the judgment" against Defendants. We determine that it does not.

The only counts pending against C. Doerhoff and Lovell at the time the trial court entered judgment in their favor were those for constructive trust, unjust enrichment, and equitable assessment. While each of these counts may have some common questions of law or fact as to the liability of the various defendants, so as to justify their joinder and the joinder of the parties in one action, each sought a judgment against each separate individual defendant for damages that were unique and specific to each defendant and for which no other defendant was liable. The counts for constructive trust and unjust enrichment sought damages against each individual defendant in an amount equal to the distributions made from PDA to that specific defendant. Similarly, the count for equitable assessment sought a judgment against each individual defendant for his or her separate pro rata share of an assessment. There are no allegations in any of these three counts supporting the entry of a judgment against one defendant for the distributions made from PDA to another defendant or for another defendant's share

of any assessment. Thus, nothing in the dismissal of the appeal as to defendants C. Doerhoff and Lovell expressly or impliedly recognizes the validity of the judgment as to any other defendants, and the appeal is not moot.

The cases cited by Defendants are readily distinguishable in that none involved claims seeking separate identifiable damages against multiple defendants. In *Schulte*, 949 S.W.2d 225, the husband appealed from a judgment dissolving his marriage that required the sale of a business jointly owned with his wife. The appellate court determined the appeal was moot as the husband complied with the decree and sold his share of the business while the appeal was pending. *Id.* at 226–27.

In *Crist v. ISC Fin. Corp.*, 752 S.W.2d 489 (Mo.App.1988), the appellant appealed an order of the Circuit Court of Cole County that had previously been ordered vacated by the appellate court in *State ex rel. ISC Fin. Corp. v. Kinder*, 684 S.W.2d 910 (Mo.App.1985). The court would not hear an appeal seeking the same relief. *Crist*, 752 S.W.2d at 492.

Finally, in *Steen v. Colombo*, 799 S.W.2d 169 (Mo.App.1990), the defendants appealed a decree quieting the title to a tract of land in the plaintiffs. The evidence showed that the defendants voluntarily satisfied the judgment against them and conveyed the tract of land to the plaintiffs before filing the notice of appeal. *Id.* at 175. Rejecting the defendants' attempt to "acknowledge and deny" at the same time the validity of the trial court's judgment, the court affirmed the judgment. *Id.* at 176.

Indeed, there is a good reason Defendants could not find case law on point. They are actually arguing that each count in Plaintiffs' petition is but one claim against multiple defendants rather than

separate claims against each separate defendant, while at the same time taking the position that the trial court's judgment is final for appeal. These positions cannot be reconciled. If we accepted the former, we would be compelled to dismiss the appeal, not for being moot, but rather for lack of a final judgment. This is so because the trial court's no-just-reason-for-delay certification under Rule 74.01(b) "is effective only when the judgment disposes of a distinct judicial unit, that is, at least one claim for relief." *Dreppard v. Dreppard,* 211 S.W.3d 620, 622 (Mo.App.2007). Each of these counts is still pending in the trial court as to three individual defendants who have not been served with process or otherwise dismissed from the case. Thus, if each count is but one claim, then the judgment does not completely dispose of it. On the other hand, Defendants' position that the judgment is final for appeal purposes presupposes that each count is a separate claim against each separate defendant, i.e., a distinct judicial unit, each of which were disposed of by the trial court's judgment, and is consistent with and supports our determination of such as previously discussed. Therefore, Defendants' claim that the appeal is moot is meritless.

### II. Section 351.482 Does not Apply

■ Before the trial court, in their suggestions in support of their respective motions for summary judgment, defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James argued that section 351.482, governing unknown claims against general and business corporations, barred Plaintiffs' claims. Apparently in response to that argument, Plaintiffs' first point on appeal asserts that "this statute does not apply to the present situation in that the statute does not apply to the dissolution of a nonprofit corporation[.]" Defendants now do not argue otherwise. Those defendants that argued its application before the trial court apparently have abandoned that position.

In arguing their point, Plaintiffs assert, in part, that:

> PDA is a nonprofit corporation. PDA was incorporated pursuant to §§ 383.010 to 383.040 to do the business of malpractice insurance. Pursuant to § 383.025, R.S.Mo., "The business of the association shall be conducted so as to preclude any distribution of income, profits or property ... to the individual members." PDA operated as a nonprofit corporation and dissolved as a nonprofit corporation. As such, PDA was required to dissolve pursuant to the Missouri Nonprofit Corporation Act, as set forth in Chapter 355 of the Missouri Revised Statutes. The provisions set forth in Chapter 351 apply to General and Business Corporations, and thus do not apply to PDA, a nonprofit corporation.

(Internal citations omitted).

Defendants do not dispute any of these factual allegations or legal conclusions drawn from those facts by Plaintiffs. They are supported by the record. Thus, we agree with Plaintiffs that section 351.482 is not applicable to bar Plaintiffs from pursuing their claims as alleged in their Fourth Amended Petition. Plaintiffs' first point has merit and is granted.

### III. Application of Section 355.696 is not Supported by the Summary Judgment Record

Defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James, who relied upon section 351.482 in the trial court, now assert, apparently in response to Plaintiffs' first point contending that PDA is a nonprofit corporation, that section 355.696, governing disposition of known claims of a dissolved nonprofit cor-

poration, applies to time-bar all of Plaintiffs' claims.

Subsection 3 of section 355.696 provides:

3. Other rules of law, including rules on the permissibility of third-party claims, to the contrary notwithstanding, a claim against a corporation which is dissolved after authorization and which has been dissolved without fraudulent intent is barred:

(1) If a claimant who was given written notice under subsection 2 of this section does not deliver the claim to the dissolved corporation by the deadline;

(2) If a claimant whose claim was rejected by the dissolved corporation does not commence proceedings to enforce the claim within ninety days from the effective date of the rejection notice.

Section 355.696.3. Defendants contend that this section "specifically addresses notice for known claims and states that if after written notice is provided and a claim is timely filed, any rejected claim by the dissolved corporation must commence within ninety days."

■ Defendants, however, make no mention of the statute's triggering requirement that the ninety-day period commences "from the effective date of the rejection notice." Section 355.696.3(2). Defendants admit, and the record supports, that the letter from McClain's attorney dated February 12, 2001, gave timely notice to PDA of Plaintiffs' claims. The record is void, however, of any uncontroverted fact that PDA or anyone on its behalf gave a "rejection notice" of those claims to any plaintiff in order to trigger the running of the period within which Plaintiffs were required to commence an action. Because the application of section 355.696 is not supported by the summary judgment record, it cannot serve as a basis to support summary judgment in favor of Defendants.

## IV. Application of Section 516.120 to Plaintiffs' Claims

Plaintiffs' second point on appeal claims the trial court misapplied section 516.120 in granting Defendants summary judgment

because the statute of limitations did not begin to run until [Plaintiffs'] cause of action accrued on November 26, 2002, in that [Plaintiffs] did not have a right to bring and maintain an action against [Defendants] until the court determined that the policy issued by PDA provided coverage for the judgment against [Insureds][.]

Plaintiffs contend, and defendants Flanary, Cesar, Chung, and A. Doerhoff agree, that the general five-year statute of limitations provided by section 516.120 governs all of Plaintiffs' claims in their Fourth Amended Petition. In their respondents' brief, defendants Fenton, Lipede, Thomas, Linde, Schwent, Downard, and James did not respond to this contention and never mentioned section 516.120. Instead, they relied solely upon their claim that the shorter section 355.696 limitation period barred all of Plaintiffs' claims. Having found that section not applicable, *supra, we now turn to the application of section 516.120.*

Section 516.100 provides, in pertinent part, that:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is

sustained and is capable of ascertainment[.]

Section 516.120 prescribes "[w]ithin five years" as the applicable period for "[a]ll actions upon contracts, obligations or liabilities, express or implied[.]" This statute of limitations begins to run when a plaintiff's right to sue arises or when a plaintiff could first successfully maintain his cause of action. *State ex rel. Gasconade Cnty. v. Jost*, 291 S.W.3d 800, 803 (Mo.App.2009). "[T]he capable of ascertainment test is an objective one." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006). The issue is not when the injury occurred or when the plaintiff subjectively learned of the wrongful conduct. *Id.* Damage is capable of ascertainment "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* "In other words, the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008) (quoting *Powel*, 197 S.W.3d at 584).

Without differentiating between their various counts in their Fourth Amended Petition, Plaintiffs contend that this date for all counts was November 26, 2002, when the judgment establishing PDA's liability under the Policy in the declaratory judgment action became final after appeal. Similarly, as to all counts, the defendants that argued in response to this point assert that Plaintiffs were put on notice of their claims when PDA denied policy coverage, which on the summary judgment record was at least by March 27, 2000, the date that McClain and Insureds entered into their section 537.065 settlement agreement. We disagree with both dates and address them in chronological order.

As to the earlier date promoted by these defendants, March 27, 2000, they cite to *Branstad v. Kinstler*, 166 S.W.3d 134, 136 (Mo.App.2005), and *Nuspl v. Mo. Med. Ins. Co.*, 842 S.W.2d 920, 923 (Mo. App.1992), for the proposition that "[w]hen the claim is based on a failure to provide insurance coverage, it is the denial of coverage that triggers the running of the statute of limitations." While we have no quarrel with this proposition, PDA's failure to provide insurance coverage is not before us in this appeal. None of the individual defendants here have a contractual obligation to any of Plaintiffs to provide insurance coverage. Accordingly, none of Plaintiffs' causes of action pleaded in their Fourth Amended Petition are for breach of an insurance contract, but rather are based upon each defendant's alleged malfeasance in some capacity with PDA. Therefore, these cases provide no support for these defendants' position.

In support of the later accrual date of November 26, 2002, Plaintiffs cite us to *English ex rel. Davis v. Hershewe*, 312 S.W.3d 402 (Mo.App.2010). In English, our Court held that the plaintiff's cause of action for legal malpractice for the defendants' failure to make a proper demand for prejudgment interest did not accrue until the jury returned its verdict in the underlying personal injury action in an amount that would have entitled the plaintiff to prejudgment interest had a proper demand been made. *Id.* at 408. While Plaintiffs here assert that "[t]he present situation is similar to that presented in [*English,*]" we see no similarity at all. First, none of Plaintiffs' counts allege a cause of action for legal malpractice. Second, PDA's liability to Insureds under the Policy accrued when PDA denied coverage, regardless of its reason for doing so.

*See Branstad,* 166 S.W.3d at 136; *Nuspl,* 842 S.W.2d at 923. This occurred at the latest on March 27, 2000. Similarly, PDA's policy obligation to pay McClain arose on August 10, 2000, the day judgment was entered in his favor in the malpractice action. *See Darrah v. Foster,* 355 S.W.2d 24, 31 (Mo.1962) (finding that the obligation on the part of the insurer to pay accrues the moment judgment against the insured has been rendered); *see also* sections 379.195 and 379.200. Neither liability required entry of a declaratory judgment. Third, upon and after the accrual of PDA's liability under the Policy, Plaintiffs were injured by Defendants' alleged wrongful acts if those acts in fact placed PDA in a position where it was financially unable to pay Plaintiffs' claim at any time, including upon the conclusion of the declaratory judgment action, irrespective of PDA's assertion of a policy defense in that case.

Plaintiffs and Defendants both mistakenly focus upon PDA and its liability under the Policy, when the relevant inquiry should focus upon the individually named defendants, their alleged malfeasance, and when a reasonably prudent person in Plaintiffs' position was placed on notice of a potentially actionable injury as against those defendants. *See Ross,* 258 S.W.3d at 811. The summary judgment record supports that this occurred on February 12, 2001, when McClain's counsel acknowledged receiving notice that PDA's corporate existence had been terminated without payment of or provision for Plaintiffs' claims. This conclusion is supported by a four-step analysis.

First, all of Defendants' actions alleged by Plaintiffs as a basis for their claims as pleaded in their Fourth Amended Petition occurred before February 12, 2001. Thus, the only remaining issue is determining when a reasonably prudent person would have been placed on notice of potentially actionable injuries arising from those actions. *Id.*

Second, before the termination of PDA's corporate existence, nothing had occurred that would have placed a reasonably prudent person on notice that PDA did not have sufficient assets to pay its Policy liability, if any, or, more importantly, that anyone associated with PDA had taken any action or received any funds potentially adverse to Plaintiffs' rights under the Policy. Until that time, all actions of PDA's statutory trustees, officers, directors, and members as related to PDA remained within PDA's private domain, subject only to examination by the director of the Department of Insurance. *See* section 383.030.

Third, the public documents of PDA's dissolution and termination filed on January 29, 2001, stated that "all debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefore." The February 12, 2001, letter from McClain's counsel, nevertheless, demonstrates that Plaintiffs were well aware on that date that PDA had not paid or discharged its liability under the Policy to Plaintiffs and that Plaintiffs had no knowledge or information that PDA had made any provision, much less adequate provision, for such payment. Thus, a reasonably prudent person would have concluded on this date that they were not going to receive any payment from PDA, because it no longer existed, or from any other source on PDA's behalf, because of the lack of any information to that effect.

Fourth, a reasonably prudent person would have also concluded on that day that PDA's refusal or inability to pay its liability under the Policy was not necessarily due to a policy defense, as claimed by PDA in the declaratory judgment action, but rather, was possibly due to an inability to

pay because of malfeasance by its officers, statutory trustees, directors, or members. Thus, the summary judgment record here supports that on February 12, 2001, Plaintiffs were placed on notice of a potentially actionable injury as against Defendants here.

By February 6, 2006, all of the defendants had been joined in this action, so based upon the summary judgment record before us, the "[w]ithin five-years" provision prescribed by section 516.120 was satisfied. Plaintiffs' second point is granted.

### V. Application of Section 516.070 is Moot

McClain argues in his third point on appeal that section 516.170 tolls the time limitation imposed by section 516.120 on his claims until he reaches the age of twenty-one.[10] Our grant of Plaintiffs' second point, finding that all claims were brought within the period provided in section 516.120, is dispositive of this appeal and moots this point.

### Decision

The trial court's judgment in favor of defendants Flanary, Cesar, Chung, A. Doerhoff, Fenton, Lipede, Thomas, Linde, Schwent, Downard, James, and Cooper is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

BARNEY, P.J., and BURRELL, J., concur.

10. Section 516.170 provides:
Except as provided in section 516.105, if any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed.