**COMMUNITY BANK OF CHILLICOTHE, MO.,**
Respondent,

v.

**Lester CAMPBELL, et ux, Appellant.**

**No. WD 47117.**

Missouri Court of Appeals,
Western District.

Nov. 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied March 22, 1994.

Charles R. Willis, St. Louis, for appellant.

Allan Brent Turner, Chillicothe, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

HANNA, Presiding Judge.

The Circuit Court of Carroll County, Missouri, ordered a partition and sale of property which was held by plaintiff Community Bank of Chillicothe, Missouri (bank) and defendants Lester Campbell and his wife.

On March 10, 1956, approximately 220 acres of real estate in Carroll County, Missouri, were conveyed to Lester Campbell and his brother, Billy Campbell. The purchase price of the property was $12,000, and each brother agreed to pay fifty percent (50%) of the purchase price and all other expenses and improvements incident to the ownership and maintenance of the property. Both contributed equally to the $2,000 down payment. Billy Campbell failed to contribute $5,000 to the purchase price and to pay one-half of the taxes, insurance, and improvements on the property.

In 1985, Billy Campbell and his wife instituted a bankruptcy proceeding and listed their ownership interest in the property with Lester Campbell as "joint tenants by warranty deed." Thereafter, the bankruptcy court authorized the sale of Billy Campbell's interest in the property and the bankruptcy trustee transferred his one-half interest to the bank.

The bank filed suit seeking partition of the property. This appeal arises from the defendants' counterclaim requesting the court to, among other things, order a set-off against the proceeds realized from the sale. As a consequence of Billy Campbell's failure to contribute in accordance with his one-half interest, the defendants claim entitlement to an equitable set-off against the property in an amount in excess of $83,000. The bank raised three affirmative defenses: the statute of limitations, that it was a good faith purchaser for value without notice, and that Lester Campbell's claim was barred by his brother's discharge in bankruptcy.

The case was tried to the Circuit Court of Carroll County on June 22, 1992. The trial court ordered the property partitioned and sold, with the proceeds from the sale, after payment of expenses, to be split equally between the bank and the defendants, Lester Campbell and wife. Also, the trial court's order credited to the bank's portion of the sale proceeds the sum of $2,000 for crops which had been grown on the premises after September 27, 1990. This credit was based on statements of plaintiff's counsel that Robert Campbell, son of Billy Campbell, had been farming the property on a sharecrop basis from the date the bank acquired its undivided one-half interest in the premises through 1992, and that Lester Campbell had harvested the crops in each of these years. We affirm the court's partition and equal division of the proceeds from the sale and reverse the decision to credit the bank $2,000.

Our standard of review is pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) in that the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

at 32. The reviewing court accepts as true all evidence favorable to the prevailing party and all reasonable inferences drawn from it, disregarding all contradictory evidence. *State ex rel. Miller v. McLeod*, 605 S.W.2d 160, 162 (Mo.App.1980). Further, the trier of fact is free to believe all, none, or only part of the testimony of any witness. *Husky Indus., Inc. v. Craig Indus., Inc.*, 618 S.W.2d 458, 460 (Mo.App.1981).

The essential facts are not in dispute. In the bank's brief, it admits that the property was held by the brothers as tenants in common. The parties stipulated that the property could not be satisfactorily partitioned in kind and agreed that it should be sold.

■ Partition is a proceeding in rem and not in personam. *State ex rel. State Park Board v. Tate*, 365 Mo. 1213, 295 S.W.2d 167, 168 (1956). It is a suit to divide the property, or as in the situation here where a sale is necessary, to divide the proceeds of the sale among the co-tenants. The interests of the parties are thereby protected. *Hartog v. Siegler*, 615 S.W.2d 632, 638 (Mo.App.1981).

■ The defendants first claim that the evidence failed to prove that Billy Campbell owned a one-half interest, and therefore, the trial court erred in holding that the bank was entitled to an undivided one-half interest in the property. The bank's sole witness testified that the bank purchased its interest in the property from Billy Campbell's bankruptcy trustee and took the property by way of deed. The defendants argue this is not sufficient evidence to prove the bank took a one-half interest, citing *Brooks v. Kunz*, 597 S.W.2d 183 (Mo.App.1980). *Brooks* stands for the proposition that there is no legal presumption in Missouri that two or more persons taking as tenants in common under an instrument which is silent with respect to their respective interests take equal shares. *Id.* at 187. Lacking this presumption and the failure of evidence, the defendants argue that the trial court erred in holding that the bank took a one-half interest in the property.

The case of *Estate of Wilson*, 740 S.W.2d 694 (Mo.App.1987) attempts to modify the *Brooks* decision by declaring that there is a rebuttable presumption that tenants in com-

mon hold equal shares. The court stated a rebuttable presumption of equal shares was "supported by logic and fairness," but noted that the presumption has not been recognized in Missouri cases, which previously required evidence of the proportionate contributions of each of the grantees toward the acquisition of the property. *Id.* at 697. The court suggested that the rebuttable presumption of equal shares should be recognized and applied by Missouri courts. *Id.*

This court applied that principle of law very clearly in *Atkinson v. Dasher*, 588 S.W.2d 215, 216–17 (Mo.App.1979), in which the court quoted 86 C.J.S. Tenancy in Common § 18 (1954), to the effect that a rebuttable presumption is created in favor of equal shares when the conveyance is silent as to the interest of each. Lester and Billy Campbell received the property by what has been described in the evidence as "joint tenants by warranty deed." In fact, a rebuttable presumption of equal interests as described in *Atkinson* is applicable to this fact situation.

In addition to this presumption, the evidence sustains the finding that the original co-tenants were equal partners. All of the testimony from Lester and Billy Campbell was that the property was purchased under a 50–50 arrangement and nothing changed throughout their ownership concerning their respective percentage shares. There was no testimony that their shares were unequal. Lester Campbell's expenditures made throughout the period of their co-tenancy did not, as he suggests, change the interest each brother owned. Therefore, the rebuttable presumption of equal ownership and the testimony of the brothers dispel any suggestion that the bank took anything other than a one-half interest in the property. We hold the evidence and the presumption in favor of equal ownership is substantial evidence that Billy Campbell's interest in the property was one-half and that was the interest the bank received. This brings us to the real controversy raised by Lester Campbell, which was that since Billy Campbell did not pay his share of the expenses, improvements, loans, or taxes, Lester Campbell was entitled to a set-off, which we interpret to mean an equitable lien against the bank's interest pur-

chased from the trustee of the bankruptcy court.

Our law recognizes that a tenant in common has a right of contribution from a co-tenant for repairs and improvements, taxes, and other expenses depending upon the nature and circumstances of the particular expenditures. *Hahn v. Hahn,* 297 S.W.2d 559, 567 (Mo. banc 1957). In a partition suit, money expended for repairs made in good faith for the substantial benefit of all co-tenants may be allowed. *Hartog,* 615 S.W.2d at 636.

It is apparent that Lester Campbell made these improvements and expenditures without the consent of his present co-tenant, the bank. However, the right to compensation for improvements made without the consent of a co-tenant is modified by equity and payment may be enforced out of partition proceeds when the improvements are made in good faith, are of a necessary and substantial nature, materially enhance the value of the property, and the circumstances show that it would be equitable to do so. *Id.; Beckham v. Eggleston,* 341 S.W.2d 337, 341 (Mo.App.1960). There are limitations on the court's equitable powers to adjust conflicting claims. The court's authority to adjust equities is inapplicable under our case law in certain situations.

An equitable lien is premised upon what is considered just and fair in each case. The lien may be either the cost of the improvements or recovery of an amount by which the property's value was enhanced solely by reason of the improvements. *Buschmeyer v. Eikermann,* 378 S.W.2d 468, 479 (Mo.1964).

The cause of action would not be available against an innocent, bona fide purchaser who bought with no understanding that the purchase would be subject to the expenditures. A "bona fide purchaser" is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith. *Johnson v. Stull,* 303 S.W.2d 110, 118 (Mo.1957). A bona fide purchaser takes property free and clear of any and all liens of third parties. Billy Campbell's sworn bankruptcy schedule reflected no

money due to his brother. Also, there was no objection by any party, specifically Lester Campbell, to the bankruptcy trustee's sale of Billy Campbell's interest in the property. In this case, the bank was an arms length purchaser of Billy Campbell's one-half interest in the property from the trustee of the bankruptcy court. The bank took the property in good faith without notice of liens, debts, or other obligations. It is to be expected that the purchase price negotiated between the bankruptcy trustee and the bank would reflect the enhanced value of the property which came about as a result of the expenditures. An arms length purchase would suggest that the new co-tenant would have paid for the increased value of the property at the time of purchase.

There was no separate accounting of taxes paid, improvements made, or other expenditures. The facts in this case do not prove that Lester Campbell entertained an expectancy that anyone, other than possibly his brother, would reimburse him for expenditures made to the property.

For an equitable lien to be invoked, "there must be a debt, a duty or an obligation owing by one person to another; a res to which the obligation attaches, which can be identified or described with reasonable certainty; and *an intent, express or implied, that the property serve as security for the debt or obligation.*" *Hartog,* 615 S.W.2d at 639 (*citing Wilkinson v. Tarwater,* 393 S.W.2d 538, 542 (Mo.1965)) (emphasis added). The agreement that existed between the brothers concerning the expenditures was sketchy and unclear from the offers of proof made by both of them except that they purchased the property on a 50–50 basis and the expenses should have been shared equally. What followed was that Billy Campbell simply defaulted on his obligation to his brother. Nothing in the testimony directly or by inference suggests an intent of any sort that the property was security for that obligation. *See id.* It is for these reasons that no equitable lien which extended to the subsequent purchaser attached to the property.

Finally, the defendants complain that the trial court erred in granting the

bank a credit against the proceeds of the partition sale for crops grown by the defendants because there was no evidence presented in support of that set-off. We agree.

The period in question covers the time between the date the bank received its undivided one-half share on September 27, 1990, and the date of the trial in July 1992. The bank and Lester Campbell were co-tenants during this period and Lester Campbell was in exclusive possession of the property. The proceeds from the harvested crops were not shared with the bank. Neither did the bank contribute toward the expenses incurred in raising the crops. Counsel for the bank recited to the court that he understood that the Campbells had a twenty-five to seventy-five percent share crop arrangement with Robert Campbell and that the bank would be entitled to twelve and one-half percent of the crop yield during this time. Counsel's secretary checked with the Missouri Agricultural Statistics Service and obtained representative yields which counsel recited to the court. Counsel then made a "guesstimate" for the present year's crop. During the recitation to the court, the defendants made proper objections. Counsel computed the bank's one-eighth share at $6,062.71 and the court allowed a $2,000 set-off.

There is no evidence, let alone substantial evidence, to support the court's award of a $2,000 set-off in favor of the bank. The "evidence" the court received was the bank's attorney's recitation which was, at best, unsworn double hearsay. It did not constitute evidence upon which a credit of $2,000 could be imposed in the bank's favor notwithstanding the fact that the court substantially reduced the bank's claim. This recitation is not elevated to substantial evidence necessary to uphold the court's decision simply because, as the bank argues, Lester Campbell would not produce the information on crop yields pursuant to proper discovery. The Missouri discovery rules provide the tools to enforce the disclosure of the information. The defendants' objection is well taken.[1]

The judgment of the trial court is affirmed as to the partition, the sale, and the division of property on a 50–50 basis between the bank and the defendants. The trial court's judgment as to the set-offs and credits is reversed and the matter remanded for further action consistent with this opinion.

All concur.

---

1. Additionally, we cannot tell from the court record whether the set-off of $533.77 to which the bank admits Lester Campbell is entitled, was in fact given. This credit was for taxes and insurance paid by Lester Campbell while the property was owned with the bank. This is conceded by the bank and it should be credited if it was not.