**Sandra Stuck BRADEN, Individually and as Personal Representative of the Estate of Frieda Pauline Stuck, Respondents,**

v.

**Gordon Harvey von STUCK, Patricia von Stuck and Boatmen's First National Bank of Kansas City, Appellants.**

No. WD 53085.

Missouri Court of Appeals,
Western District.

June 3, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied
Sept. 30, 1997.

Heywood H. Davis, Kansas City, for Respondent.

Major W. Park, Jr., Kansas City, for Appellants von Stuck.

Kip A. Stetzler, Kansas City, for Appellant Boatmen's Bank.

Before ULRICH, C.J., P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from a permanent injunction issued by the Honorable Charles Shangler, Special Judge for the Circuit Court of Jackson County. After the death of her mother, Frieda P. Stuck (decedent), respondent Sandra S. Braden (Mrs. Braden), individually and as the personal representative for her mother's estate, filed for and received a temporary restraining order against her brother, G. Harvey von Stuck (Mr. von Stuck); his wife, Patricia von Stuck (Mrs. von Stuck); Boatmen's First National Bank (Bank); and Piper Jaffray, Inc.[1] The temporary restraining order, *inter alia*, prohibited Mr. von Stuck from obtaining the proceeds from a $475,000 cashier's check that he had received in exchange for a personal check he had written on a checking account at the Bank, which account was initially opened by the decedent, and to which Mr. von Stuck's name was subsequently added. Respondents requested the trial court make permanent its temporary restraining order, or, in the alternative, impose a constructive or resulting trust on the cashier's check and the remaining funds in the checking account for the benefit of the decedent's estate.[2] After a

bench trial, the court made permanent its temporary restraining order, which directed that the cashier's check be returned and ordered "the balance of the funds in [the account] ... [to] be paid forthwith to the Estate of Frieda Pauline Stuck for distribution in accordance with her Will."

On appeal, appellants assert five claims. Points I and III deal with the conclusive presumption of § 362.470.1[3] and the relevance of the decedent's intent with respect to the ownership of the checking account in question. Appellants claim in Points I and III that the trial court erred in disregarding the conclusive presumption of joint tenancy with right of survivorship under § 362.470.1 and instead relying on decedent's intent in determining the ownership of the account. Point II alleges that it was error for the trial court to disregard the conclusive presumption of § 362.470.1, in that there was no showing of undue influence, fraud, mistake or mental incapacity necessary to defeat the presumption. In Points IV and V, appellants allege that even if no joint tenancy with right of survivorship was created under § 362.470.1, the trial court still erred in ordering the return of the cashier's check without the evidentiary grounds necessary to establish a constructive or resulting trust.

We reverse.

### Facts

Frieda P. Stuck (decedent) opened a checking account, number 02–1555–006074, at Boatmen's First National Bank (Bank) in her sole name on October 26, 1981. On June 28, 1991, the Bank issued a replacement signature card, upon which both decedent's and Mr. von Stuck's signatures appear. Several portions of the replacement card were left blank—the "designation of ownership" section, which contained boxes denoting "sole owner," "joint tenancy with right of survivorship" and "joint tenancy by the entirety," as

---

1. Respondents' claim against Piper Jaffray, Inc., was later dismissed.

2. In addition, respondents' petition for permanent injunction requested the von Stucks be restrained from occupying decedent's apartment and removing its contents; transferring any and

all of decedent's assets; and proceeding in any way to disturb decedent's assets or financial affairs from their status as of her death.

3. All statutory references are to RSMo 1994, unless otherwise indicated.

well as the "number of signatures required" section.

At trial, Mr. von Stuck testified that the decedent wanted the account to be joint so that he could write checks on her behalf if she became incapacitated and for him to have the money in the account when she died. Conversely, respondents' witnesses testified that it was decedent's intent that Mr. von Stuck's name be added to the account for the sole purpose of allowing him to write checks and pay her bills in case she fell ill and that the account, like all her property, was to be equally divided at her death between Mr. von Stuck and Mrs. Braden. Decedent wrote a number of checks on the account before her death. Mr. von Stuck also wrote checks on the account during decedent's life, although evidence at trial indicated that she had either specifically authorized or co-signed all of these checks. After decedent's death, the Bank honored checks that only Mr. von Stuck had signed.

Decedent died testate on March 15, 1995. Her will left her entire estate to her two children, Mr. von Stuck and Mrs. Braden, in equal shares, and named both of them as personal representatives. The will did not specifically refer to the account at the Bank, which amounted to $517,752.16 at that time. On March 16, 1995, Mr. von Stuck went to the Bank, wrote a personal check on the account and obtained a cashier's check payable to himself in the amount of $475,000. The following day, on March 17, 1995, Mr. von Stuck sought the advice of decedent's attorney before attempting to cash the check. The attorney told Mr. von Stuck that because it was not clear whether he was a joint tenant on the account or he was only acting under a power of attorney on decedent's behalf, he wanted to examine the Bank's depository agreement. Mr. von Stuck returned with a copy of what was purported to be the replacement signature card. The trial court specifically found that Mr. von Stuck had not produced a true copy, because the section designated for "joint tenancy with right of survivorship" was left blank on the original replacement signature card, but was checked on Mr. von Stuck's copy reflecting a joint account.

On March 17, 1995, respondents obtained a temporary restraining order, which ordered that the cashier's check be returned to the Bank on the grounds that the account was not a joint account, or, in the alternative, because fraud, undue influence or mistake had occurred. The temporary restraining order was granted and continued to be in effect until the time the trial court made it permanent. Respondents requested that the temporary restraining order be made permanent, or, in the alternative, a constructive or resulting trust on the cashier's check and the funds in the checking account for the benefit of the decedent's estate.

The court issued its "opinion, findings of fact and judgment" on June 26, 1996. It held that the replacement signature card did not meet the conditions giving rise to a presumptive joint tenancy in the account with right of survivorship. The court also made a specific finding that no undue influence, fraud, mistake or lack of capacity affected decedent's actions with respect to the account. As to her intent, the court determined that the decedent did want Mr. von Stuck to be able to pay bills on her behalf, but did not intend to create a joint account with right of survivorship with him. The court ordered that the funds represented by the cashier's check and the remaining funds in the account be paid to decedent's estate for distribution in accordance with her will.

This appeal followed.

### Standard of Review

Our review here is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Fox v. Smidt*, 869 S.W.2d 904, 905 (Mo.App. 1994). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Conflicting evidence is resolved in favor of the trial court's determination, as we defer to the trial court's assessment of witness credibility. *Stewart v. Stewart*, 905 S.W.2d 114, 116 (Mo. App.1995). The court is entitled to believe all, none or only part of testimony of any witness. *Community Bank of Chillicothe, Mo. v. Campbell*, 870 S.W.2d 838, 841 (Mo.

App.1993). We accept as true "all evidence favorable to the prevailing party and all reasonable inferences drawn from it, disregarding all contradictory evidence." *Id.*

### I. Conclusive Presumption of Joint Tenancy Under § 362.470.1

In their first point, appellants claim that the trial court erred by finding that the depository documents in regard to decedent's checking account did not comply with § 362.470.1 to create a joint tenancy with right of survivorship as to the account. Appellants also claim that the trial court erred in considering the decedent's intent in determining the ownership of the checking account in that the conclusive presumption of § 362.470.1 rendered the decedent's intent irrelevant as to this determination.

With respect to the conclusive presumption of joint tenancy with right of survivorship as to bank deposits, § 362.470.1 provides:

> When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor.

This section was interpreted by the Missouri Supreme Court in *Maudlin v. Lang,* 867 S.W.2d 514 (Mo. banc 1993), as providing three "routes" to create a joint tenancy with right of survivorship:

> 1) describing the named persons as "joint tenants"; 2) making the deposit "in form to be paid to any one or more of [the named persons]"; or 3) making the deposit "in form to be paid to ... the survivor or survivors."

> The second and third methods use the clause, "in form to be paid." This clause focuses upon the method of designating payment, commonly by deposit agreements or similar documents. Without using magic words such as "joint tenants," "survivor," or "survivors," such documents may create a joint tenancy by using language that the deposit is to be paid to either any one or more of the named persons, or the survivor or survivors of them.

*Id.* at 516.

As the parties agree, under the facts of this case, only "route two" has any application. In this regard, appellants contend that the language of the replacement signature card, signed by decedent and Mr. von Stuck, and the applicable depository agreement comply with "route two" in creating a joint tenancy with right of survivorship under § 362.470.2. On the other hand, respondents contend that the language of the replacement signature card does not comply with § 362.470.2 and is ambiguous as to the ownership of the checking account, and that no depository agreement can be considered in determining ownership. The issue, then, for us to decide is whether the documents relied on by appellants to comply with "route two" of § 362.470.1 can be read, either individually or together, to find that the checking account in question was in a "form to be paid to any one or more of the named persons [decedent and Mr. von Stuck]."

■ *Maudlin* holds that if the language of the account documents complies with § 362.470.1 through one of the "routes" outlined, the presumption of joint tenancy with right of survivorship is conclusive. *Maudlin,* 867 S.W.2d at 516–17. And, as appellants correctly contend, such " '[s]tatutory compliance makes evidence of the depositor's intent (other than in the deposit documents) irrele-

vant.'" *Id.* at 517. However, in the event that the language of the documents is ambiguous in establishing compliance with § 362.470.1, *Maudlin* holds that "evidence of the intent of the depositor is relevant, and controls the disposition of the deposit" (citations omitted). *Maudlin*, 867 S.W.2d at 517. Further, if the statutory presumption of § 362.470.1 applies, it can only be defeated by establishing fraud, undue influence, mental incapacity or mistake. *Estate of Hayward*, 884 S.W.2d 10, 14 (Mo.App.1994); *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993).

We begin our analysis by examining the language of the replacement signature card. In contending that there was "route two" compliance, appellants point to the following language of the replacement signature card:

**By signing this signature card, I agree to be bound by the** service charges and account fees and **rules in effect at the bank from time to time concerning my account** and to the terms and conditions on the reverse side of the card, which I have read and understood. (front)

. . . . .

Bank is hereby authorized to recognize the signatures listed on the reverse side for transaction of business.... **All transactions on any accounts now or hereafter existing with the [B]ank shall be governed by the rules and regulations in effect from time to time which govern accounts of this type. Receipt of the current rules and regulations is hereby acknowledged.** (back) (emphasis supplied by appellants)

Appellants argue that this language, in and of itself, complies with § 362.470.1, and that if even it does not, compliance is still attained through the incorporation language of the card, which appellants contend incorporates the language of the applicable depository agreement.

In arguing that the language of the replacement signature card is sufficient to establish compliance with § 362.470.1, appellants rely on the language of the card that states: "**Bank is hereby authorized to recognize the signatures listed on the reverse side for transaction of business.**" Appel-

lants assert that this language authorized the Bank to transact business on the account with the signatories listed on the card, decedent and Mr. von Stuck, and that "transaction of business" would include withdrawals from the account. Appellants further assert that if such an interpretation is given to this phrase, then the language of the replacement signature card relied on would comply with "route two" of § 362.470.1, raising the conclusive presumption of joint tenancy with right of survivorship as to the checking account.

In *Maudlin*, the Missouri Supreme Court, in finding that the account in question that was "in form to be paid to any one or more of the named persons," and, thus, that there was "route two" compliance with § 362.470.1, based its finding on the following language appearing in the depository agreement in issue:

**WITHDRAWALS—Any one of you who signs on the reverse side may withdraw or transfer all or any part of the account balance at any time on forms approved by us.**

*Maudlin*, 867 S.W.2d at 517. Likewise, in *Griffin v. Miller*, 899 S.W.2d 930, 935 (Mo. App.1995), this court, in finding "route two" compliance with the statute, relied on almost identical language in the depository agreement in question, which stated:

**WITHDRAWALS—GENERALLY— Withdrawals may be made by written order (check) or withdrawal slip, on forms approved by us, signed by the persons designated in this agreement.**

Thus, both courts held that the authorization of the signatories to the agreement to make withdrawals on the account complied with the statute making the account a joint tenancy with right of survivorship, in spite of the absence of language referring to them as "joint tenants" or making the account in form to be paid to the "survivor" or "survivors." The question then for us to decide is whether the phrase, "transaction of business," appearing in the replacement signature card here can be interpreted to include making withdrawals from the checking account.

 In interpreting language of an agreement, such as the replacement signature card, words are to be given their plain

and ordinary meaning as understood by a reasonable and average person. *Daily v. Daily,* 912 S.W.2d 110, 114 (Mo.App.1995). In making its interpretation, the court must look to the entire agreement and consider the object, nature, and purpose of the agreement. *Central City Ltd. Partnership v. United Postal Sav. Ass'n,* 903 S.W.2d 179, 182 (Mo.App.1995). The object, nature, and purpose of the replacement signature card was to set the parameters between the signatories and the Bank for transacting business associated with the checking account, which would logically and reasonably include withdrawals from the account. Thus, we find that the "transaction of business" language used in the replacement signature card would include making withdrawals from the checking account, and that it authorized the decedent and Mr. von Stuck to make withdrawals on it. And, as such, the deposits or funds of the checking account in question were "in form to be paid to any one or more of" the decedent or Mr. von Stuck, complying with "route two" under § 362.470.1. *Maudlin,* 867 S.W.2d at 517; *Griffin,* 899 S.W.2d at 935.

Respondents argue that the language of the replacement signature card does not comply with § 362.470.1. In support of their argument, respondents point to the fact that the designation-of-ownership section on the card was not completed, which provides options including "sole owner," "joint tenancy with right of survivorship" and "joint tenancy by the entirety," and the fact the number-of-signatures-required section was also not completed.

As to the ownership section not being completed, our case is identical to *Maudlin* and *Griffin,* as these cases involved bank deposit agreements that also did not specify the ownership of the account. *Maudlin,* 867 S.W.2d at 516; *Griffin,* 899 S.W.2d at 935. Both *Maudlin* and *Griffin* held that the purpose of § 362.470.1 is to determine ownership where the account documents do not specifically identify the ownership of the account. *Maudlin,* 867 S.W.2d at 516; *Griffin,* 899 S.W.2d at 934–35. Thus, the fact that the ownership-designation section here was not completed is not fatal to "route two" compliance with § 362.470.1.

As to the failure to complete the number-of-signatures-required section, we find it also is not fatal to "route two" compliance with § 362.470.1. Had the number-of-signatures-required section been completed, it would have either designated one or two signatures as necessary to transact business, in that only decedent's and Mr. von Stuck's signatures appear on the card. And, regardless of whether the section had designated "one" or "two" as the required number of signatures to transact business, this evidence would not, in and of itself, create or defeat a joint tenancy with right of survivorship under "route two" of § 362.470.1. "Route two" provides that the presumption of joint tenancy with right of survivorship will arise when the deposit is read to be in a "form to be paid to any one or more" of the persons named. *Maudlin,* 867 S.W.2d at 516; *Griffin,* 899 S.W.2d at 935. In this respect, whether the parties placed a "one" or "two" in the number-of-signatures-required section, the checking account would still be in a "form to be paid to any one or more" of the named persons. Further, the completion of this section, whether "one" or "two," would logically authorize Mr. von Stuck to transact business on the account, with the former authorizing him to transact business without the decedent's consent and the latter with her consent. This arrangement would, of course, apply equally to the decedent, who respondents admit was an "owner" of the account. Thus, although the number-of-signatures-required section, if completed, would limit the Bank's ability to transact business to a specific number of individuals, it would not prevent the account from complying with "route two" of § 362.470.1, vesting joint ownership of the account in the decedent and Mr. von Stuck with a right of survivorship.

■ Having found the conclusive presumption of § 362.470.1 applied here pursuant to the language of the replacement signature card, the intent of the decedent, as found by the trial court, was rendered irrelevant. *Maudlin,* 867 S.W.2d at 517. And, the presumption, once established, can only be defeated by a finding of fraud, undue influence, mental incapacity or mistake. *Fix,* 847 S.W.2d at 765; *Hayward,* 884 S.W.2d at 14. In this respect, the trial court specifically found that there was no evidence to support such a finding. Respondents did not appeal this ruling by the court. Thus, the conclu-

sive presumption of the checking account being one of joint tenancy between the decedent and Mr. von Stuck, with a right of survivorship, must stand, and the trial court erred in not applying the presumption and entering its permanent injunction.

In ruling as we do, we are mindful of the overwhelming evidence of and the trial court's finding that the decedent's intent was not to create with her son a joint tenancy with a right of survivorship as to the checking account. Regardless, given the law as enacted by our legislature and the interpretation given to it by our Missouri Supreme Court in *Maudlin,* the decedent's intent as to her money deposited in the account is rendered "irrelevant." The reasonableness or equity of such a result is not ours to question.

Given our disposition as to Point I, we need not address appellants' remaining points.

### Conclusion

The judgment of the trial court is reversed, and accordingly, its permanent injunction ordered dissolved.

All concur.