STATE of MISSOURI, ex rel., MIS-
SOURI HIGHWAYS AND TRANS-
PORTATION COMMISSION, Appel-
lant,

v.

WESTGROVE CORPORATION,
et al., Respondents.

No. ED 95960.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 6, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 2012.

Application for Transfer
Denied May 29, 2012.

See also 53 S.W.3d 222.

Appeal from the Circuit Court of St. Louis County, Honorable James R. Hartenbach, Judge.

John E. Toma, Jr., Melissa M. Zensen, St. Louis, MO, for Appellant.

Wendy S. Menghini, Elizabeth Nguyen, Charles L. Merz, St. Louis, MO, for Respondent.

ROBERT M. CLAYTON III, J.

The Missouri Highway and Transportation Commission ("MHTC") appeals the judgment of the trial court granting summary judgment in favor of David and Patricia Matula ("the Matulas") on MHTC's claims for fraudulent conveyance and conspiracy to defraud and on the Matulas' counterclaim for equitable subrogation. MHTC also appeals the trial court's judgment following a bench trial in favor of the Matulas on their counterclaim for bona fide purchaser. We affirm in part and reverse and remand in part.

## I. BACKGROUND

This case comes before us after considerable history with our Court. The litigation between the parties originated in 1998 and has resulted in three appearances before this Court. The present appeal derives from the taking of a portion of real property located at 1045 Majestic Drive ("the property") for the construction and maintenance of a State highway. The property was owned by Westgrove Corporation ("Westgrove"). William J. Matula was the resident agent, president, treasurer, and a director of Westgrove. His wife, Suzanne Matula, was the vice-president, secretary, and a director of Westgrove. MHTC compensated Westgrove for the taking of its property; however, it was ultimately determined that Westgrove was over-compensated for the property. A stipulation of settlement and judgment was entered on December 20, 1995 ("the judgment"), approving an agreement between the parties that Westgrove owed MHTC $326,549.04 as a result of the reduction of the amount paid for the taking of the property.

Prior to entry of the judgment, Westgrove had encumbered the property with a deed of trust to Bank of South County in the amount of $180,000.00. David Matula, William J. Matula's brother, agreed to loan Westgrove funds to pay the first mortgage on the property. Pursuant to this agreement, Westgrove executed three promissory notes, secured by three mortgages on the property (collectively referred to as "the second mortgage"). During the course of the loan, David Matula made a total investment of $90,500.00 pursuant to his agreement with Westgrove. Westgrove was ultimately unable to pay the first mortgage, and the Matulas sought to purchase the property to prevent the second mortgage from being extinguished by foreclosure on the first mortgage. Westgrove entered into a contract for the sale of the property to the Matulas for $230,000.00. The Matulas also agreed to release the second mortgage on the property.

On December 28, 1995, Westgrove transferred its rights, title, and interest in the property to the Matulas. Although the judgment in favor of MHTC for $326,549.04 was entered on December 20, 1995, the abstract of the judgment containing information about the judgment and its parties was not filed with the office of the circuit clerk until December 29, 1995, nine days after the judgment was entered and one day after the Matulas closed on the purchase of the property.

In 1998, MHTC filed a petition against Westgrove and the Matulas, among others, alleging that the judgment had not been paid and claiming Westgrove transferred title to the property to the Matulas with the intent to defraud MHTC.[1] MHTC subsequently dismissed the action without prejudice, and re-filed its petition, alleging fraudulent conveyance, fraud and conspiracy to defraud, and pre-judgment attachment against Westgrove and the Matulas.

In 2002, MHTC sought to execute its judgment lien on the property and was given an order of special execution. On April 3, 2002, the Sheriff of the St. Louis County Circuit Court sold the property at a judicial sale to MHTC for $385,000.00, and MHTC received a deed to the property from the Sheriff. Thereafter, the Matulas filed a counterclaim to MHTC's petition, alleging that they were bona fide purchasers of the property without notice of the judgment lien, and therefore, they were fee simple owners of the property. Alternatively, the Matulas argued the doctrine of equitable subrogation should be applied to grant them an equitable lien on the property in the amount of $283,000.00, which was the amount of the first and second mortgages which were released when the Matulas purchased the property.

The trial court granted summary judgment in favor of the Matulas on MHTC's claims for fraudulent conveyance, fraud and conspiracy to defraud, and pre-judgment attachment, and in favor of the Matulas on their counterclaim for equitable subrogation. MHTC thereafter dismissed its remaining claim against Westgrove for fraud and conspiracy to defraud. MHTC appealed the grant of summary judgment; however, in *State ex rel. Missouri Highway and Transp. Comm'n v. Westgrove Corp.*, 306 S.W.3d 618 (Mo.App. E.D.2010), our Court dismissed the appeal, finding it was not a final judgment for purposes of appeal because the trial court had not decided whether the Matulas were bona

1. Gene Overall, the circuit clerk of St. Louis County, Missouri, was also named as a defendant in the suit. He was dismissed from the cause of action, and this Court affirmed the dismissal in *State ex rel. Missouri Highway and Transp. Comm'n v. Overall*, 73 S.W.3d 779 (Mo.App. E.D.2002) (*"Overall II"*).

fide purchasers without notice entitled to fee simple title to the property.

After MHTC's appeal was dismissed, the parties proceeded to trial on the issue of whether the Matulas were bona fide purchasers without notice. Following a bench trial, the court entered judgment in favor of the Matulas on their claim, finding they were bona fide purchasers without notice with fee simple title to the property. The trial court further found that MHTC had no interest of any kind in the property pursuant to the December 20, 1995 judgment. MHTC now appeals.

## II. DISCUSSION

### A. Summary Judgment

In its first three points on appeal, MHTC challenges the trial court's grant of summary judgment in favor of the Matulas. First, MHTC argues the trial court erroneously granted summary judgment in favor of the Matulas on their counterclaim for equitable subrogation. Second, MHTC claims summary judgment in favor of the Matulas on MHTC's claims was improper because the undisputed facts show the Matulas purchased the property subject to MHTC's judgment lien. And finally, MHTC contends summary judgment in favor of the Matulas on MHTC's claims was improper because genuine issues of material fact exist concerning whether the Matulas paid fair market value for the property and whether the Matulas conspired with Westgrove to defraud MHTC.[2]

### 1. Standard of Review

Our review of summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc

1993). Although we view the record and construe all inferences favorably to MHTC as the non-movant, facts set forth in support of the Matulas' motion for summary judgment are taken as true unless contradicted by MHTC's response. *See Id.* We will affirm the grant of summary judgment only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 377. Moreover, we must affirm the trial court's judgment if, as a matter of law, it is sustainable under any theory. *Stark Liquidation Co. v. Florists' Mutual Ins. Co.,* 243 S.W.3d 385, 392 (Mo.App. E.D.2007). If the movant is a defending party, as the Matulas are here, summary judgment is proper if that party shows, among other things, that MHTC, after adequate discovery, will not be able to produce evidence sufficient to allow a trier of fact to find the existence of one or more of its required elements of proof. *Wilson ex rel. Wilson v. Simmons,* 103 S.W.3d 211, 215 (Mo.App. W.D.2003).

### 2. Equitable Subrogation

In its first point on appeal, MHTC argues the trial court erred in granting summary judgment in favor of the Matulas on their counterclaim for equitable subrogation because MHTC did not engage in any fraudulent conduct and was not unjustly enriched by enforcement of its judgment lien.

 Equitable subrogation is essentially an argument that a party should be given a lien on property as a matter of equity. *See Ethridge v. TierOne Bank,* 226 S.W.3d 127, 134 (Mo. banc 2007). There is no general rule concerning when

---

**2.** The Matulas respond by claiming MHTC failed to timely file a response to their statement of undisputed facts pursuant to Missouri Supreme Court Rule 74.04(c)(2), and therefore, all of the Matulas' factual assertions are deemed admitted. However, the trial court granted MHTC leave to file its response, and MHTC did so. Thus, the Matulas' contention that all facts alleged in their statement of undisputed facts are deemed admitted is without merit.

the doctrine of equitable subrogation is applicable. *Id.* Instead, its application depends upon the particular facts of each case. *Id.* The doctrine is enforced when a person making the payment stands in relation to the property or to the other parties such that his interests can only be fully protected and maintained by regarding payment as an assignment to him, and the mortgage interest as intact, either wholly or in part, for the benefit and security of that party. *Id.* Equitable subrogation compels the payment of a debt by one who in justice and equity should pay it. *Metmor Fin., Inc., v. Landoll Corp.*, 976 S.W.2d 454, 461 (Mo.App. W.D.1998). This is a "fairly drastic remedy" allowed in extreme cases "bordering on if not reaching the level of fraud." *Id.* (internal citations omitted). The Missouri Supreme Court in *Ethridge* specifically stated that for equitable subrogation to apply, the party against whom the doctrine would be applied must have "engaged in fraudulent conduct or committed acts bordering on fraud that created the condition that caused the lender a loss." 226 S.W.3d at 134; *See also Metmor Fin., Inc.*, 976 S.W.2d at 461.

■ In the present case, the Matulas' counterclaim contended they were entitled to an equitable lien on the property in the amount of the first and second mortgages on the property, totaling $283,000.00. According to the Matulas, if they had not purchased the property and extinguished these mortgages, MHTC's judgment lien would have been inferior to the first and second mortgages. Thus, the proceeds from any judicial sale to satisfy MHTC's judgment lien would have been applied to pay off the first and second mortgages. As a result, under the doctrine of equitable subrogation, the Matulas sought to be placed in the position of the first and second mortgage holders, with priority over MHTC's judgment lien. However, the Matulas did not allege any fraudulent conduct or acts bordering on fraud by MHTC in their counterclaim. In addition, there is no evidence of such fraudulent conduct in the summary judgment record. Instead, the undisputed facts show that MHTC was innocent in its attempt to enforce the judgment lien on the property, and innocent of any fraud with respect to the Matulas' purchase of the property and subsequent extinguishing of the first and second mortgages.

In *Metmor Financial, Inc.*, the court considered whether equitable subrogation applied in a situation similar to the present case. In *Metmor Financial, Inc.*, family members purchased property from one another, without actual notice of a judgment lien on the property held by Landoll Corporation. 976 S.W.2d at 456, 457. Landoll Corporation initiated proceedings to recover its judgment lien by judicial sale, and Metmor Financial, Inc. and the purchasers of the property filed a petition requesting declaratory and injunctive relief. *Id.* at 458. The trial court denied the request for relief. *Id.* The Western District affirmed the trial court's decision. *Id.* at 464. The court specifically noted that the party seeking to enforce its judgment lien, Landoll Corporation, was innocent of any complicity, and therefore, Metmor Financial, Inc. failed to show it was entitled to equitable subrogation. 976 S.W.2d at 462.

In its judgment granting summary judgment in favor of the Matulas on their counterclaim for equitable subrogation, the trial court attempted to distinguish the present case from Missouri case law which requires evidence of fraudulent conduct or acts bordering on fraud for equitable subrogation to apply. *See Ethridge*, 226 S.W.3d at 134; and *Metmor Fin., Inc.*, 976 S.W.2d 454. The trial court reasoned that the Matulas were not required to plead or prove "fraud, negligence and/or complicity" by MHTC because the cases requiring

such evidence involved parties attempting to advance ahead of an abstracted judgment, not an unabstracted judgment lien as in the present case. This distinction places the focus upon the recording requirements for judgments set forth in Chapter 511 of the Missouri Revised Statutes concerning judgments and the subsequent knowledge such recording imparts.

In point two on appeal, MHTC claims the trial court erred in granting summary judgment in favor of the Matulas because the judgment lien attached on the date the judgment was rendered, which was prior to the purchase of the property. As such, MHTC argues the trial court's distinction between abstracted and unabstracted judgments was erroneous, and summary judgment was improper. We agree.

The purchaser's knowledge of the existence of a judgment lien through the abstracting or recording procedure set forth in Chapter 511 is not a prerequisite to pleading or proving fraudulent conduct to succeed on a claim for equitable subrogation. Instead, the cases simply note that although the application of the doctrine depends upon the particular facts of each case, for this "drastic remedy" to apply, there must be acts bordering on, if not reaching the level of, fraud. *Ethridge*, 226 S.W.3d at 134; *Metmor Fin., Inc.*, 976 S.W.2d at 461. The cases do not predicate the requirement of fraudulent conduct upon whether a judgment has been abstracted or not. Therefore, the trial court's finding that the Matulas did not have to plead or prove fraudulent conduct to succeed on their claim for equitable subrogation because the judgment in the present case was unabstracted was erroneous.

As a result of the foregoing, the trial court's grant of summary judgment in favor of the Matulas on their counterclaim for equitable subrogation was erroneous. Point one and two on appeal are granted.

### 3. MHTC's Claims

In point three on appeal, MHTC claims the trial court erred in granting summary judgment in favor of the Matulas on MHTC's claims for fraudulent conveyance and conspiracy to defraud because there were genuine issues of material fact precluding summary judgment. Specifically, MHTC argues there was a genuine issue of material fact concerning whether the Matulas paid fair market value for the property, and whether the Matulas conspired with Westgrove to defraud MHTC.

### a. Fraudulent Conveyance

■ The trial court granted summary judgment in favor of the Matulas on MHTC's claim for fraudulent conveyance, finding that the undisputed facts established that the Matulas paid "reasonably equivalent value" for the property, and therefore MHTC could not prove an essential element of its claim of fraudulent conveyance. We agree.

Section 428.029.1 RSMo 2000[3] provides, in relevant part, that a transfer is fraudulent as to a creditor whose claim arose before such transfer if the debtor made the transfer without receiving a "reasonably equivalent value" in exchange for the transfer, the debtor was insolvent at the time, or the debtor became insolvent as a result of the transfer.[4] The undisput-

---

3. All further statutory references are to RSMo 2000.

4. MHTC also argues the undisputed facts establish a claim for fraudulent conveyance under Section 428.029.2. However, MHTC did not plead fraudulent conveyance pursuant to subsection 2 in its first amended petition, and therefore, the trial court granted summary judgment based upon the undisputed facts establishing the right to judgment as a matter of law under subsection 1. Thus, we need not consider whether the Matulas were entitled to summary judgment under subsection 2 as well.

ed facts of this case show the Matulas agreed to purchase the property for $230,000.00. It is also undisputed that the Matulas paid over $90,500.00 toward the second mortgage to assist Westgrove in paying the first mortgage on the property. The parties do not dispute that the Matulas released the second mortgage on the property upon purchasing the property. Thus, including the $90,500.00 the Matulas had invested in the second mortgage on the property, they ultimately paid $320,500.00 for the property. MHTC's own expert appraised the property at a value of between $300,000.00 and $400,000.00 at the time the Matulas purchased it. As a result, considering the facts in the light most favorable to MHTC, the undisputed facts in the summary judgment record establish that the Matulas paid reasonably equivalent value for the property. Therefore, the trial court correctly determined MHTC was unable to establish an essential element of its claim for fraudulent conveyance, and summary judgment in favor of the Matulas on this claim was proper. Point three on appeal is denied.

### b. Conspiracy to Defraud

MHTC also challenges the trial court's grant of summary judgment in favor of the Matulas on MHTC's claim of conspiracy to defraud. The trial court found the undisputed facts supporting summary judgment showed the Matulas were contractually obligated to purchase the property from Westgrove before the judgment was entered, and therefore, MHTC could not prove an essential element of its claim for conspiracy to defraud.

■■■ A "civil conspiracy" is the agreement or understanding between two parties to commit an unlawful act, or to use unlawful means to carry out a lawful act. *Mark VII, Inc. v. Barthol,* 926 S.W.2d 128, 131 (Mo.App. W.D.1996); *See also 8000 Maryland, LLC v. Huntleigh*

*Fin. Serv., Inc.,* 292 S.W.3d 439, 451 (Mo. App. E.D.2009). Civil conspiracy is not a cause of action in and of itself, but rather it is an imposition of liability based upon an underlying wrongful act. *Id.* The basis for a claim of civil conspiracy is not the conspiracy itself, but is the wrong done by the acts in furtherance of that conspiracy resulting in damage to the plaintiff. *Id.*

■■■ Here, MHTC's claim against the Matulas for conspiracy to defraud was predicated on an allegation that the Matulas agreed with Westgrove to fraudulently transfer the property to avoid paying the judgment. There are no facts in the summary judgment record to indicate any agreement or understanding between Westgrove and the Matulas to fraudulently transfer the property. Instead, as discussed above, the undisputed facts negated an essential element of MHTC's claim for fraudulent conveyance. In addition, the undisputed facts establish that the Matulas did not know about the judgment at the time they entered into their contract to purchase the property. Therefore, MHTC cannot prove that the Matulas acted in concert with Westgrove to fraudulently transfer the property to avoid paying MHTC's judgment. As a result, summary judgment in favor of the Matulas on MHTC's claim for conspiracy to defraud was proper. Point three on appeal is denied.

### B. Court–Tried Case

In its final two points on appeal, MHTC challenges the trial court's judgment in favor of the Matulas following a bench trial, finding the Matulas were bona fide purchasers of the property for value. In point four, MHTC argues the trial court erred in entering judgment in favor of the Matulas because there is no bona fide purchaser exception to this Court's holdings in *State ex rel. Missouri Highway and*

*Transp. Comm'n v. Overall,* 53 S.W.3d 222 (Mo.App. E.D.2001) ("*Overall I*") and *Overall II.* In its fifth and final point, MHTC contends the trial court's judgment in favor of the Matulas was not supported by substantial evidence and was against the weight of the evidence because the Matulas had notice of facts that would place a reasonably prudent person on inquiry about the title to the property.

### 1. Standard of Review

We review a court-tried case to determine whether the judgment is supported by substantial evidence, it is against the weight of the evidence, or whether the trial court correctly declared or applied the law. *8000 Maryland, LLC,* 292 S.W.3d at 445.

### 2. Bona Fide Purchaser

The Matulas filed a counterclaim to MHTC's petition, alleging they were bona fide purchasers of the property without notice of the judgment lien, and therefore, they were entitled to fee simple title to the property. A bona fide purchaser is one who pays valuable consideration with no notice of any outstanding rights of others, and who acts in good faith. *Community Bank of Chillicothe, Missouri v. Campbell,* 870 S.W.2d 838, 842 (Mo.App. W.D.1993). The notice sufficient to defeat a claim of bona fide purchaser status can be actual or constructive notice of facts that would place a reasonable person upon inquiry about the title he is about to purchase. *Will Investments, Inc. v. Young,* 317 S.W.3d 157, 166 (Mo.App. S.D.2010). "A bona fide purchaser takes property free and clear of any and all liens of third parties." *Campbell,* 870 S.W.2d at 842.

In this case, the trial court found that the Matulas paid valuable consideration for the property, and they had no actual or constructive knowledge of the judgment at the time of their purchase. Further, the trial court found the Matulas acted in good faith when they purchased the property.

Thus, the court entered judgment in favor of the Matulas on their counterclaim, finding they were bona fide purchasers and awarding them fee simple title to the property.

In its fourth point on appeal, MHTC claims the trial court's judgment in favor of the Matulas was erroneous because there is no bona fide purchaser exception to this Court's holdings in *Overall I* and *Overall II. Overall I* involved similar claims against Westgrove concerning a different property, and *Overall II* was the first appearance of the parties to the present suit before our Court. In its fifth and final point on appeal, MHTC claims the trial court erred in entering judgment in favor of the Matulas on their counterclaim because the Matulas had constructive notice of the judgment lien. We address these points together.

In *Overall I,* our Court considered whether summary judgment was proper on MHTC's fraudulent conveyance claim, and whether the trial court properly granted summary judgment on MHTC's petition for declaratory judgment based upon the date the judgment became a lien on the property at issue in that case. 53 S.W.3d at 225, 226–27. Although this case concerned a separate property than the property which is the focus of the dispute in the present case, as well as separate defendants, our Court considered similar arguments concerning summary judgment. Our Court concluded that a genuine issue of material fact existed as to the fraudulent conveyance claim because the evidence showed the property was sold for at least $1,000,000.00 below the appraised value. *Id.* at 226. In addition, we concluded a genuine issue of material fact existed as to whether the transfer of property was done in good faith. *Id.* Finally, our Court resolved the conflict between the various statutory and Supreme Court

rule provisions concerning the creation of a judgment lien. Section 511.360 and Rule 74.08 mandate that a lien commences upon entry of the judgment. However, pursuant to Section 511.510, the circuit court clerk has a duty to enter an abstract of such judgment within five days after the rendition of any final judgment as required by Section 511.500. Section 511.500 states that *no judgment shall be a lien on real estate until the abstract is entered in the proper record.* In *Overall I*, this Court resolved the conflict in favor of our Supreme Court rules, and held that Rule 74.08 governs over the contradictory statutes in procedural matters. *Id.* at 228. Applying Rule 74.08, we concluded that the judgment lien in *Overall I* arose when the judgment was entered. *Id.*

In *Overall II*, which constituted the first appearance of the parties to the present suit before our Court, we affirmed the dismissal of Gene Overall, the county circuit clerk, from MHTC's suit. 73 S.W.3d at 783. This Court, following the decision from *Overall I*, determined that because the lien arose on the date of the judgment, which was prior to the mortgage, MHTC could not prove any damages as a result of Overall's alleged omission in failing to abstract the judgment in a timely manner. *Id.*

MHTC argues that our decisions in *Overall I* and *Overall II* negate any claim by the Matulas that they were bona fide purchasers based upon the Missouri statutes requiring that judgments be recorded because *Overall I* and *Overall II* essentially preclude any claim concerning the validity of an unabstracted judgment lien. However, the validity of the lien is not the central issue in the Matulas' bona fide purchaser counterclaim. There is no question that pursuant to *Overall I* and *Overall II*, a judgment lien arises when the judgment is entered. 53 S.W.3d at 228, 73 S.W.3d at 783. Nevertheless, we must

consider whether the attachment of the lien at the time the judgment is entered constitutes constructive notice of such a lien to defeat a bona fide purchaser claim.

As discussed above, a bona fide purchaser is one who pays valuable consideration for property without notice of any outstanding rights of others, and who acts in good faith. *Campbell*, 870 S.W.2d at 842. Notice can be actual notice or constructive notice of facts that would place a reasonable person upon inquiry about the title he is about to purchase. *Young*, 317 S.W.3d at 166.

Missouri case law has clearly stated that where a statute provides that a judgment shall create a lien on real property, that judgment imparts constructive notice of the lien. *See City of Belton v. Community Bank, N.A.*, 863 S.W.2d 345, 347 (Mo.App. W.D.1993); *Knutson v. Christeson*, 684 S.W.2d 549, 552 (Mo.App. S.D.1984). In *City of Belton* the court noted that a judgment is considered a public record from the time of its rendition, imparting constructive notice of the lien to the public. *Id.*

Here, the evidence at trial established that the Matulas entered into a contract for the purchase of the property prior to the entry of the judgment creating the lien on the property. However, the judgment creating the lien on the property was entered on December 20, 1995. The parties closed on the purchase of the property on December 28, 1995.

Based upon the evidence presented at trial, and pursuant to this Court's holdings in *Overall I* and *Overall II*, the judgment creating the lien on the property was entered on December 20, 1995, prior to the Matulas' purchase of the property. Thus, the Matulas were charged with constructive notice of the lien and could not have been bona fide purchasers. *City of Belton,*

863 S.W.2d at 347; *Knutson,* 684 S.W.2d at 552. As a result, the trial court erred in entering judgment in favor of the Matulas on their bona fide purchaser claim, and the Matulas took title to the property subject to MHTC's judgment lien. Point five on appeal is granted.

## III. CONCLUSION

The judgment of the trial court is affirmed as to the grant of summary judgment in favor of the Matulas on MHTC's claims for fraudulent conveyance and conspiracy to defraud. We reverse the trial court's grant of summary judgment in favor of the Matulas on their claim of equitable subrogation, and we reverse the judgment of the trial court in favor of the Matulas on their counterclaim for bona fide purchasers. The cause is remanded for further proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, P.J., concurs in opinion of Judge CLAYTON and concurs in the separate concurring opinion of Judge ROMINES.

KENNETH M. ROMINES, J., concurs in separate opinion.

KENNETH M. ROMINES, J., concurring.

I concur but write separately. I reach my conclusion to reverse the summary judgment based on equitable subrogation and bona fide purchaser for value by a somewhat different method.

These claims concern judgment liens in condemnation cases. Specifically, when and to what property such liens attach and when a party is presumed to have notice of the lien. We also examine the issue of equitable subrogation.

*Background and Procedural History*

The following sequence of events is relevant to the disposition of this case.

**16 March 1989:** Westgrove purchases a parcel of land (the parcel). **14 January 1992:** The condemnation commissioners file their report ordering the Missouri Highways and Transportation Commission (MHTC) to pay Westgrove $1,250,000 for the taking of a portion of the parcel.

**21 January 1992:** MHTC files its exceptions to the commissioners' award and demands a jury trial on the issue. Westgrove files its exceptions to the commissioners' award and also demands a jury trial.

**26 October 1992:** Westgrove grants Bank of South County deed of trust for $180,000.

**29 October 1992:** Bank of South County records its deed of trust with the St. Louis County Recorder of Deeds Office.

**24 May 1994:** David Matula agrees to lend Westgrove[1] or William Matula $32,200 and to begin making the interest payments on the Bank of South County loan.

**26 May 1994:** William and Suzanne Matula execute promissory note in favor of David Matula for $61,000.

**6 June 1994:** David Matula records the mortgage and security agreement securing the 26 May promissory note.

**26 October 1994:** Westgrove executes promissory note in favor of David Matula for $61,000.

**31 October 1994:** David Matula records the mortgage and security agreement securing the 26 October promissory note.

1. Westgrove is owned by William Matula, brother of David Matula

**3 January 1995:** Westgrove executes promissory note in favor of David Matula for $42,000.

**9 January 1995:** David Matula records the mortgage and security agreement securing the 3 January promissory note.

**2 October 1995:** David Matula and wife sign a written sales contract agreeing to purchase the parcel from Westgrove for $230,000.

**18 December 1995:** Westgrove enters into Stipulation for Settlement and Judgment with MHTC, stipulating that Westgrove owes MHTC $326,549.04, plus interest at a rate of nine percent per annum for overvaluation by the commissioners of the condemned portion of the parcel.

**20 December 1995:** St. Louis County Circuit Court enters the 18 December Judgment.

**28 December 1995:** David Matula releases all interest he had in the parcel pursuant to the three mortgage and security agreements. Westgrove conveys all right, title and interest in the parcel to David Matula and wife by General Warranty Deed.

**29 December 1995:** St. Louis County Circuit Clerk abstracts the 20 December Judgment.

**4 January 1996:** Bank of South County releases its deed of trust on the parcel.

**16 January 2002:** St. Louis County Circuit Court issues Order of Special Execution directing sheriff to levy upon the parcel.

**3 April 2002:** MHTC purchases the parcel for $385,000 at sheriff's sale.

Through this litigation, David Matula and wife and MHTC seek to determine their particular rights in respect to the parcel. The trial court granted summary judgment against MHTC on their claims for fraudulent conveyance, fraud and conspiracy to defraud, and pre-judgment attachment, and in favor of the Matulas on their counterclaim for equitable subrogation. After a bench trial on the issue of whether the Matulas were bona fide purchasers without notice, the court entered judgment in favor of the Matulas, finding they held fee simple title to the parcel as bona fide purchasers without notice, and that MHTC had no interest in the parcel.

### Discussion

We find that the Missouri Highways and Transportation owns the parcel, subject to no liens in favor of the Matulas, by operation of the sheriff's sale on 3 April 2002.

A valid lien in favor of MHTC attached to the parcel on 20 December 1995 when the circuit court entered the judgment stipulating that Westgrove Corp. owed MHTC $326,549.04 (plus interest). A judgment lien attaches to real property at the time the judgment is rendered. Section 511.350; Rule 74.08; *First American Title Ins. Co. v. Birdsong*, 31 S.W.3d 531, 536 (Mo.App. S.D.2000).[2] The lien attaches to all real property owned by the creditor in the county in which the judgment is rendered. *Birdsong*, 31 S.W.3d at 536. "A judgment is considered rendered

**2.** Judgments and decrees entered by the supreme court, by any United States district or circuit court held within this state, by any district of the court of appeals, by any circuit court and any probate division of the circuit court, except judgments and decrees rendered by associate, small claims and municipal divisions of the circuit courts, shall be liens on the real estate of the person against whom

they are entered, situate in the county for which or in which the court is held.

Section 511.350.1
> Except as provided in Chapter 454, RSMo, or Chapter 517, RSMo, the lien of a judgment commences upon entry of the judgment, continues for a period of ten years, and is revived by a revival of the judgment.

Rule 74.08

when entered and is entered when 'a writing signed by the judge and denominated 'judgment' or 'decree' is filed.' Rule 74.01(a)." *Coleman v. Meritt*, 324 S.W.3d 456, 459 (Mo.App. S.D.2010). As such, a lien in favor of MHTC attached to all property owned by Westgrove in St. Louis County on 20 December 1995 when the judgment was signed and filed. Such property included the parcel over which the Matulas claim title.

The Matulas argue that pursuant to Section 511.500, the lien did not attach until it was abstracted by the circuit clerk on 29 December 1995, a day after they had purchased the property, and thus they took the parcel free of the lien. This same argument was rejected by this Court in *State ex rel. Missouri Highway and Transp. Com'n v. Overall*, 53 S.W.3d 222 (Mo.App. E.D.2001). This Court found that while there may be a contradiction between Rule 74.08 and Section 511.500, in this case, Rule 74.08 prevailed. *Id.* at 228. Supreme Court rules govern over contradictory statutes in procedural matters. *Id.* The issue as to when a lien pursuant to a judgment *attaches* is procedural in that "it provides a mean for enforcing a judgment, rather than creating or defining an individual's rights." *Id.* The Matulas' argument is equally unavailing now as it was in *Overall.* MHTC's judgment lien attached to the parcel when the judgment was rendered, not when it was abstracted.

Alternatively, the Matulas argue that even if the lien attached, they took title to the parcel sans the lien because they were bona fide purchasers without notice when they "bought" the parcel on 28 December 1995. "A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith." *Johnson v. Stull*, 303 S.W.2d 110, 118 (Mo.1957). "A bona fide purchaser takes free of adverse claims to prior, unrecorded interests in the property." *In re Idella M. Fee Revocable Trust*, 142 S.W.3d 837, 842 (Mo.App. S.D. 2004). The Matulas' argument rests on the false assumption that they could not be charged with having notice of MHTC's lien until it was abstracted on 29 December 1995. To the contrary, the Matulas had notice of the lien when the judgment was rendered on 20 December 1995.

The recording of a judgment, properly entered and docketed, is notice of what it contains or recites, as well as such facts as might be fairly inferred from its recital, and such record carries with it constructive notice of the facts therein expressly recited as well as such facts as might be fairly inferred from its recitals. Further, regardless of the nature of the action or the judgment sought, where a statute provides that a judgment shall create and establish a lien on the real property of the judgment debtor, the judgment imparts notice of such lien. *Knutson v. Christeson*, 684 S.W.2d 549, 552 (Mo.App. S.D.1984). The Matulas received notice when the stipulation judgment which gave rise to the lien was of record on 20 December, not when that judgment was abstracted on 29 December. Thus, the Matulas could not have been bona fide purchasers without notice on 28 December and they took title subject to MHTC's lien.

The parties present no evidence that there was anything irregular about MHTC's revival of the judgment, its execution on the lien, or the sheriff's sale. As the lien that supported the sheriff's sale attached prior to the sale of the parcel from Westgrove to the Matulas' and as the Matulas' had notice of that lien prior to purchase, MHTC took fee simple title to the parcel when it placed the winning bid at the sheriff's sale.

Finally, the Matulas' argue that even if MHTC owns the parcel, they are entitled

to be subrogated to the rights of the first and second mortgageholders as of 28 December 1995 due to the doctrine of equitable subrogation. MHTC argues that equitable subrogation does not apply to the facts of this case because MHTC did not commit any fraud in relation to the conveyance of the property to the Matulas and that MHTC was not unjustly enriched by the enforcement of its judgment lien.

There are no allegations by any party that MHTC was in any way involved in the conveyance of the property from the Westgrove to the Matulas. Such an absence is fatal to the Matulas' claim to equitable subrogation. Subrogation is a drastic remedy and is usually allowed only in extreme cases bordering on if not reaching the level of fraud. *Metmor Financial, Inc. v. Landoll Corp.*, 976 S.W.2d 454, 461 (Mo.App. W.D.1998). "... [E]quitable subrogation is not granted in the absence of complicity by the superior lien holder in obtaining the loan." *Id.* at 462. Here, MTHC had no complicity in the Matulas' purchase of the parcel from Westgrove. MTHC in no way attempted to conceal its judgment lien on the property from the Matulas. As such, the Matulas' interest cannot be advanced ahead of MHTC's. The circuit court's conclusion to the contrary is error.[3]

The Matulas argue that they should be granted equitable subrogation to avoid the unjust enrichment of MHTC. The Southern District rejected a nearly identical argument in *Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 204–05 (Mo. App. S.D.2002). The Court recognized that while equitable subrogation can be an appropriate vehicle to prevent unjust enrichment, "equity follows the law," and as such cannot be invoked to destroy an existing legal right. *Id.* at 204. The Court held that when a court enters a judgment imposing a lien on real property, this creates a legal right in favor of the judgment creditor. *Id.* at 205. Such legal right can not be defeated by principles of equity. *Id.* In this case, MHTC's legal right commenced upon entry of judgment on 20 December 1995. *Id.* The Matulas' rights did not commence until they closed on the property on 28 December 1995. As such, the Matulas cannot invoke equity to destroy MHTC's legal right.

### Conclusion

A valid lien in favor of MHTC attached to all property owned by Westgrove in St. Louis County when the court entered the stipulation judgment on 20 December 1995, including that portion of the parcel which had not been condemned. That same act gave the whole world notice of the lien. As the Matulas had notice of that lien on 20 December 1995, they could not have been bona fide purchasers of the parcel on 28 December 1995. When the Matulas purchased the parcel on 28 December 1995, they took title subject to MHTC's lien. After MHTC properly executed on that lien, it obtained title to the parcel by operation of the sheriff's sale. Since the Matulas and the Bank of South County had voluntarily released their respective interests in the parcel prior to the sheriff's sale, MHTC took fee simple title.

Any interest the Matulas might have had after that sale was dependent on their ability to invoke the doctrine of equitable subrogation. As MHTC had no involvement in the conveyance of the property from Westgrove to the Matulas, the Matulas cannot use equitable subrogation to destroy MHTC's rights.

I agree that the judgment of the circuit court in favor of the Matulas on their claims for bona fide purchaser and equita-

---

**3.** We need reach no conclusion in regard to the dealing brother to brother.

ble subrogation should be reversed and the case remanded for further proceedings.